HARTFORD ACCIDENT AND INDEMNITY
COMPANY, Petitioners,

v.

Alvis HALE, Respondent.

No. A–10840.

Supreme Court of Texas.

Feb. 9, 1966.

Rehearing Denied March 23, 1966.

Frank R. Nye, Jr., Rio Grande City,
Atlas, Freeland, Schwarz & Gurwitz, Mc-
Allen, for petitioners.

Arnulfo Guerra, Roma, Emilio Guitierrez,
Rio Grande City, Wellborn & Houston,
Henderson, for respondent.

CALVERT, Chief Justice.

Suit was brought by Mrs. Alvis Hale against Hartford Accident and Indemnity Company to recover benefits under the Texas Workmen's Compensation Law for the death of her husband, Otis O. Hale. She alleged that her husband's death resulted from injuries he sustained in the course of his employment with Sun Oil Company while working on some pumping equipment. The case was tried to a jury. Based upon the jury's verdict, the trial court rendered judgment in favor of Mrs. Hale for the sum of $11,634.87. The Court of Civil Appeals reversed the judgment of the trial court and remanded the case for a new trial. 389 S.W.2d 720. Both parties applied for writ of error. Hartford's application was granted on points of error asserting that the Court of Civil Appeals erred in not rendering judgment that the plaintiff take nothing. Mrs. Hale's application was granted because of the granting of Hartford's application. We reverse the judgments of the Court of Civil Appeals and trial court and render judgment that the plaintiff take nothing.

In answer to special issues the jury found that Hale sustained an accidental injury in the course of his employment and that the injury was a producing cause of his death. By proper points of error Hartford asserted in the Court of Civil Appeals, and asserts here, that the findings that Hale's injury was accidental and was sustained in the course of his employment have no support in evidence of probative value. The Court of Civil Appeals impliedly overruled the points. We sustain the point that there is in the record no evidence of probative value to support the finding that Hale's injury was sustained in the course of his employment.

■■ As proof that Hale's injury was accidental and was sustained in the course of his employment, the plaintiff was permitted by the trial court to introduce testimony of L. E. Nix as to what he was told by Hale concerning where and how he was injured. The contention of Hartford is that this testimony was not admissible even if the statements by Hale meet the time requirement of the res gestae exception to the hearsay rule, because there is no independent proof of the incident or occurrence to which the statements relate. That there must be such proof to constitute statements made by an injured person a part of the res gestae is settled by our recent decision in Truck Insurance Exchange v. Michling, Tex.Sup., 364 S.W.2d 172 (1963). The rationale of the decision is that to be admissible as res gestae the statements must be shown to have been a spontaneous reaction to an exciting event, and the statements themselves cannot be used to prove the exciting event. In addition to the cases cited in Michling as authority for our holding, see cases cited in an annotation in 163 A.L.R. 15, at page 219, et seq. Evidence which establishes only that the event *could have* occurred does not satisfy the requirement; it must be sufficient to support a finding that it *did* occur. A fair summary of the competent evidence having any bearing on Hale's injury follows.

Hale was a maintenance man for Sun Oil Company. His working hours were from 7:00 a. m. to 3:30 p. m. His immediate superior was L. E. Nix, a production foreman for Sun with certain of its leases under his supervision. Upon request, Nix would send Hale to leases where he was informed maintenance services were needed; but, by custom Hale would often make an independent check of pumping equipment and machinery at the various leases to see if repairs were needed.

Hale left home for work in a pickup furnished him by Sun at about 6:45 a. m. on January 31, 1963. Some time between 10:00 a. m. and 11:00 a. m. he arrived at the company's office dressed in his work clothes and went to Nix's office. He said he had been injured and he appeared to Nix to be in pain. Nix took him to another room and had him remove his pants to see how badly he was injured. When the examination revealed injuries to Hale's groin, buttocks and lower ribs, Nix called

in Robert G. Denyer, Sun's area Superintendent, who also made an examination. The two concluded that Hale should see a doctor, and Nix took him to a doctor who hospitalized him at 12:05 p. m. Examination by the doctor disclosed a "pressing" or "crushing" type of injury from the lower rib cage to the crest of the pelvis on the left side, with moderately severe bruises, a bruised elbow, a scratched and bruised area on his left leg, and a broken rib. Hale remained in the hospital until February 6th when he was discharged and sent home. He re-entered the hospital on February 15th and died the next day from a heart attack.

The statements by Hale concerning his injury which Nix was permitted to testify to were made a few minutes after entering Nix's office and were that he had been injured; that he was injured at well No. 6 on the F. G. Perez lease; that the clutch was thrown on the pumping unit and he set the brake and then pulled the plug and found water in the crankcase; that to keep oil and water from getting on his clothes, he put the plug back in and stepped back in the line of the counterbalancing weights and they came down and mashed him against the A-frame.

A photograph of the pumping unit is in the record. The testimonial description of it is rather meager. Early in the afternoon of January 31, Nix and Denyer visited Perez Well No. 6 to see if they could discover how Hale had been injured. Nix testified that the pumping unit was not running, the brake was not set, and that as best he remembered the counterbalances were all the way down. He found no traces of clothing, blood or skin. Denyer testified that the pumping unit was running. Both testified to seeing unidentifiable shoe prints at the unit. Denyer testified that the shoe prints were out of line with where Hale said he was when he was injured. Nix testified the tracks were found "under the counterbalance, *or near it*." [1] Asked if they were "in the right place where they would

have been if a man had been caught between the counterbalance weights and the A frame," Nix replied: "They were not plain enough really to tell. If there was any pushing or shoving—well, it was just shoe prints." He testified he did not see "much scuff marking there."

■ There is nothing in the evidence summarized, other than Hale's statements to Nix, even tending to prove that Hale sustained an injury by being caught between the counterbalance weights and the A-frame of an oil well pumping unit except that he left home in a company pickup to go to work and was seen in his work clothes some three hours or more later with a pressing or crushing type of injury which *could* have been caused in that manner. This is not enough. The statements made to Nix by Hale were therefore not admissible in evidence as a part of the res gestae.

The plaintiff relies on Texas Employers Ins. Ass'n. v. Noel, Tex.Civ.App., 269 S. W.2d 835 (1954), writ refused, n. r. e.; Atkinson v. United States Fidelity & Guaranty Co., Tex.Civ.App., 235 S.W.2d 509 (1951), writ refused, n. r. e., and Texas Employers Ins. Ass'n. v. Shifflette, Tex.Civ. App., 91 S.W.2d 787 (1936), writ dismissed, as requiring a different holding. All of these cases antedated our decision in Truck Insurance Exchange v. Michling, Tex., 364 S.W.2d 172 (1963), and are examined and distinguished in our opinion in that case. They need no further analysis.

In spite of the absence of evidence to show where and how Hale was injured, the Court of Civil Appeals held that two items of proof constituted some evidence that he sustained an accidental injury in the course of his employment. The first item is a statement in a pleading which was filed in the case by Hartford but which was later abandoned. In the pleading, Hartford alleged that Hale's death resulted from a heart attack caused solely by a pre-existing condition or disease "which existed for

---

1. Emphasis ours throughout.

some time prior to *the injuries he received on January 31, 1963*"; that "*the injuries that Otis O. Hale received on January 31, 1963*" did not cause Hale's heart attack from which he died; and that Hale's heart attack was the result of natural causes "and not the result of *the injuries that he sustained on January 31, 1963.*" The second item is proof that after Hale's death and at the request of Sun, Hartford delivered to Sun its check for $50.00 payable to Otis O. Hale in payment of compensation benefits accruing prior to Hale's death. The payment was made before Hartford had investigated the circumstances surrounding the alleged injury. If either of the items has any probative value it is because it constitutes an admission by Hartford that Hale sustained an accidental injury in the course of his employment.

■■ The quoted allegations from Hartford's abandoned pleading may constitute an admission that Hale was injured on January 31, 1963, but they obviously do not constitute an admission that his injury was accidental or that it was sustained in the course of his employment. Neither, we conclude, can the payment by Hartford of the compensation benefits be taken as an admission of such facts. We held in Southern Underwriters v. Schoolcraft, 138 Tex. 323, 158 S.W.2d 991 (1942), that voluntary payment of weekly compensation benefits would not estop an insurer from denying liability for weekly benefits in the amount so paid. See also Lopez v. Associated Employers Ins. Co., Tex.Civ.App., 330 S.W.2d 522 (1960), writ refused, in which it was held that voluntary payment of weekly benefits did not estop the insurer from denying that the employee had sustained an accidental injury. The reason given for the holding in Schoolcraft was that courts should encourage and not discourage prompt payment of weekly benefits to an injured employee, "and a holding that payments made pending the final investigation of the claim would be binding upon the insurer both as to liability and rate of compensation regardless of what that investigation should disclose

would manifestly discourage prompt payments following injuries." 158 S.W.2d 995. The rationale of that holding prompts us to hold here that voluntary payments of weekly compensation benefits to an injured employee is not an admission by the insurer that the injury was accidental and was sustained in the course of his employment, and has no probative value as such. We hold, therefore, that neither the allegations in the abandoned pleading nor the payment by Hartford of the compensation benefits constituted evidence of probative value that Hale sustained an accidental injury in the course of his employment.

There are a number of cases in which it has been held that voluntary payment of weekly benefits by an insurer has probative force as an admission that the insurer's policy had been issued and was in force at the time of the alleged injury. See Casualty Reciprocal Exchange v. Berry, Tex. Civ.App., 90 S.W.2d 595 (1935), writ refused; Associated Employers' Reciprocal v. Brown, Tex.Civ.App., 56 S.W.2d 483 (1933), writ dismissed; Texas Employer's Ins. Ass'n. v. Varner, Tex.Civ.App., 20 S.W.2d 334 (1929), no writ history; Georgia Casualty Co. v. Ginn, Tex.Civ.App., 272 S.W. 601 (1925), writ dismissed. The reason given for so holding is that the insurer is in possession of its own books and records and is in position to know without investigation whether it issued a policy to the employer and whether the policy is in force. The same reason does not exist for holding that voluntary payments has probative force as an admission that an employee sustained an injury in the course of his employment. Whether a reported injury was sustained in the course of employment often requires careful and extensive investigation, and a holding that payments made during investigation is evidence of all facts predicating liability would be a disservice to the laboring man who is usually in need of immediate assistance when he is injured. It has also been held that voluntary payments of weekly benefits constitute an admission which under some circumstances will furnish evi-

dentiary support for a judgment awarding benefits in the amount so paid. See Traders & General Ins. Co. v. Harper, Tex.Civ. App., 140 S.W.2d 593 (1940), writ refused. That holding does not prompt us to a different conclusion on the issue before us. The soundness of the holding in Southern Underwriters v. Girard, Tex.Civ.App., 107 S.W.2d 775 (1937), no writ history, and in Texas Employers' Ins. Ass'n. v. Bowen, Tex.Civ.App., 227 S.W.2d 846 (1950), writ refused, n. r. e., that voluntary payments is evidence that the claimant was at the time of his injury an employee of the insurer's insured, need not be decided here. The question is not before us.

■ When the statements by Hale to Nix and the two items of proof discussed above are disregarded, we search the record in vain for evidence of probative force that Hale sustained an injury in the course of his employment.

The judgments of the Court of Civil Appeals and the trial court are reversed and judgment is here rendered that plaintiff take nothing.