The TRAVELERS INSURANCE COM-PANY, Appellant,

v.

Mrs. Elton S. SMITH, a Widow, Appellee.

No. 6050.

Court of Civil Appeals of Texas.

El Paso.

Dec. 3, 1969.

Rehearing Denied Dec. 31, 1969.

Lawrence L. Fuller, Max N. Osborn, Midland, for appellant; Turpin, Smith,

**542**

Dyer, Hardie & Harman, Midland, of counsel.

Grover Swift and H. L. Roberson, Kermit, for appellee.

OPINION

WARD, Justice.

This is an appeal from a judgment of the District Court of Winkler County, Texas, based upon jury findings awarding appellee, as surviving widow, death benefits under the Workmen's Compensation Law as the result of the death of Elton Smith from a heart attack. At the close of all the evidence, the appellant filed its motion for instructed verdict on the ground that there was no evidence of probative force reflecting that the deceased sustained an accidental injury on March 27, 1968, in the course of his employment for Gulf Oil Corporation, which was a producing cause of his death; that there was no evidence that he suffered an injury to the heart as the result of a strain or over-exertion, and that the only evidence offered to prove the alleged incident or occurrence giving rise to the heart attack was hearsay testimony which came from the history given to the doctor. The same grounds were again asserted in motion for judgment non obstante veredicto. The motions having been overruled, the asserted errors were preserved in appellant's motion for new trial, also overruled, and are now before us.

Appellant's principal contentions that the judgment of the trial court should be reversed and rendered are presented to us in its first four points that there is no valid proof in the record that the deceased suffered a strain or over-exertion producing a heart attack on March 27, 1968, while engaged in the course of his employment for Gulf Oil, his employer. These "no evidence" points, being to the effect that the trial court was barred by rules of law or evidence on the only evidence of the vital fact, will be considered first. The facts, for our purposes, are undisputed, as the only witnesses were called by the appellee.

Elton Smith had worked for Gulf Oil Corporation for 23 years, the last two or three years as a pumper and well treater in Winkler County. In his duties, he was required to carry out to the wells a chemical in thirty-gallon containers, draw out a gallon of the chemical, pour it into a container at the well and wash this down the well. The one-gallon container of acid would weigh seven to eight pounds. He was also required to service chemical pumps at the wells and would have to carry a five-gallon container of the material, weighing 35 to 40 pounds, to the pumps at the well site and there inject it into the wells. On occasions he was required to move one of the pumps themselves from one well to another, and the pumps weighed from 50 to 100 pounds. On March 27th, Mr. Smith left his home for work around 6:45 A.M. At that time he appeared normal and well and had no complaints concerning his physical condition. He was next seen at Mack's Cafe for his usual morning coffee at 6:50 A.M., at which time he appeared to be in good health and with no complaints concerning his physical condition. He was seen to leave the cafe at 7:10 A.M. driving off in the company pickup truck which contained a tool box, chemical tank, some five-gallon cans and a spare tire. He was next seen at 9:00 A.M. some five miles from Mack's Cafe, going into Gulf's Oscar Clapp lease where they had wells to be treated. He was next seen by his wife at 10:00 A.M., appearing very nervous, upset, and in severe pain, and he went immediately to the doctor's office where he was seen by Dr. Howard at about 10:30 A.M. complaining of severe chest pains and at that time quite apprehensive and indicating quite a bit of distress, anxiety and severe pain. Over objection, the doctor testified that Mr. Smith gave this history: that he had been working on the job and was manipulating some equipment, and had this sudden onset of severe pains and he came home and directly

to the doctor's office." The doctor examined him for some thirty minutes and administered a narcotic and a tranquilizing type of drug. An electrocardiogram was made which showed no apparent acute heart damage at that time, though his blood pressure was high. He was given rest, became easier, but later in the afternoon he became progressively worse and died at 5:00 P.M. of an acute myocardial infarction. Dr. Smith testified that in his opinion, in all reasonable medical probability, Mr. Smith suffered an acute myocardial infarction, which was damage or harm to the physical structure of the body, or his heart; that the infarction or damage to the heart occurred just prior to Mr. Smith's coming into the office on March 27th; that the stress or strain of moving the equipment brought it about; that in all reasonable medical probability if Mr. Smith had lifted a can of acidizing chemical that weighed as much as seven or eight pounds, it would have caused the attack. Dr. Howard had treated Mr. Smith for years with complaints about some high blood pressure and questionable heart trouble, but until March 27th there had never been found any definite evidence of any specific disease process going on within the heart.

The appellant objected to the introduction of the doctor's testimony in regard to the history of the morning's episode on the grounds of hearsay and as not being admissible when such statement relates specifically to the disputed issue in the case as to how the injury occurred, if any injury did in fact occur.

In considering the evidence of Dr. Howard, admittedly the treating physician, the nature of the ailment should be considered. This was a heart attack and it was important for the physician to know what brought on the first sign of the patient's sudden pain. In the first discussion, we are not dealing with a res gestae type of exception to the hearsay rule, but with the exception relating to a declaration as to the bodily condition of the declarant.

The correct rule, we believe, is set forth in McCormick & Ray, Texas Law of Evidence § 835:

"It is the general rule that an expert witness, having testified to an opinion, is permitted to give in evidence, either in direct or cross-examination, an account of the basis upon which he founds the opinion. * * * Accordingly when a physician has observed and been consulted by a patient, and testifies as an expert witness with reference to the nature of the ailment, his evidence, in giving the reasons for his opinion, as to statements made to him by the patient upon which his opinion has been partly founded is admissible. Since they are not offered as evidence of the facts declared but merely as an explanation of the previous opinion, they are not hearsay and hence are not subject to the restrictions which hedge in the use of such declarations as hearsay."

It is in this light that we view the opinions of our Supreme Court, and others, on the subject. Walker v. Great Atlantic & Pacific Tea Co., 131 Tex. 57, 112 S.W.2d 170; Bean v. Hardware Mutual Casualty Company, Tex.Civ.App., 349 S.W.2d 284 (Beaumont 1961, ref. n. r. e.). As stated in the footnote of the text, in reference to the Walker case:

"Unfortunately, the case has been cited for the view that 'when the patient's statements concern the disputed issue of how injury occurred, the physician may not recite them even as the basis for his opinion.'"

See Texas Employers' Ins. Ass'n. v. Morgan (Eastland 1945), Tex.Civ.App., 187 S.W.2d 603 (ref. w. m.); Texas Employers' Ins. Ass'n. v. Wright (Amarillo 1946), Tex. Civ.App., 196 S.W.2d 837 (ref. n. r. e.); Monks v. Universal Underwriters Insurance Co., Tex.Civ.App., 425 S.W.2d 431 (Tyler 1968, ref. n. r. e.). For the purpose of explaining the opinion of Dr. Howard, the testimony was admissible. As inde-

pendent proof of the act itself, it was not admissible.

"* * * It is therefore uniformly held that declarations descriptive of external events such as the crime, accident, or other happening which caused the injury to the declarant, are inadmissible as evidence of their truth. Nor is this rule relaxed for declarations made to a physician called in for professional aid or treatment, though the declarant's motive to describe the incident accurately for the doctor's information is only slightly less here than in the case of descriptions of past pain and symptoms, which are admissible, and though the dividing line between descriptions of external cause and of bodily effect may in practice be difficult to draw." (McCormick & Ray, Texas Law of Evidence § 843).

But while we feel the testimony is admissible for the limited purpose described, this still gives the appellee no comfort to the establishment of the vital fact.

█ In searching for another method by which the testimony of the declarant to the physician becomes admissible, we come to the so-called "res gestae" exception to the hearsay rule. Even assuming, for the purposes of argument, that all requisites for the use of the exception are present, the appellee is confronted by our law, as expressed in Truck Insurance Exchange v. Michling, 364 S.W.2d 172 (Tex.1963), and Hartford Accident and Indemnity Company v. Hale, 400 S.W.2d 310 (Tex. 1966). In the first case it is pointed out that where there is no independent proof that the deceased suffered any injury at approximately the time and place alleged, and the only evidence of the occurrence is the hearsay statement, the proof is attempting to lift itself by its own bootstraps. This opinion states:

"For declarations to be admissible in evidence as part of the res gestae they must be made in connection with an act proven. In other words there must be

evidence of an act itself admissible in the case independently of the declaration that accompanies it. * * *"

"As aptly said in 32 C.J.S. Evidence § 405: * * * 'It is proceeding in a circle to use the declarations as proof of facts necessary to constitute declarations part of the res gestae.'"

Here, the appellee states that the circumstantial evidence is sufficient to show an accidental injury by the deceased while at work. At 9:00 A.M. he is in his company truck out on his usual run going into a lease where his employer has wells that need to be treated. At that time, he has in his truck the cans and containers to do the job. To do his job, he is going to have to do some lifting. At 10:00 A.M. he is back at his home in town complaining of severe chest pains. At 10:30 he is in the doctor's office, and dies at 5:00 that same afternoon. The doctor is positive that the damage to the heart occurred just prior to Mr. Smith's coming into the office and that it was due to a strain such as would be produced by lifting a can weighing some seven or eight pounds. Appellee maintains that this is the proof sufficient to satisfy the requirement that there be independent proof of the event to corroborate the hearsay evidence. In Hartford Accident and Indemnity Company v. Hale (supra), the facts are similar to our situation, although no one saw the deceased near the site of the injury. Questionable shoe tracks were found at the well claimed to be the site of the accident. There the court stated:

"There is nothing in the evidence summarized, other than Hale's statements to Nix, even tending to prove that Hale sustained an injury by being caught between the counterbalance weights and the A-frame of an oil well pumping unit except that he left home in a company pickup to go to work and was seen in his work clothes some three hours or more later with a pressing or crushing type of injury which *could* have been caused in that manner. This is not enough. The

statements made to Nix by Hale were therefore not admissible in evidence as a part of the res gestae.

" * * * Evidence which establishes only that the event *could have* occurred does not satisfy the requirement; it must be sufficient to support a finding that it *did* occur."

At best, this is what is presented to the court in the present case. Mr. Smith could have been moving some equipment or he could have treated a well or he could have used the chemicals. As Dr. Howard frankly admitted, the heart attack was caused by a strain, and "it is not particularly where he was or what he was doing. If he had been mowing his yard, he could have had a heart attack there." And again he was asked the following question:

"Q Based upon your own findings, without the benefit of what Mr. Smith told you, you cannot tell this jury that his death was caused by his work for Gulf Oil or whether his death was caused by a preexisting condition, can you?

A No, sir. Not without the history. We have to have the two."

Appellee relies primarily on the following cases: Texas Employers Ins. Ass'n v. Shifflette, 91 S.W.2d 787 (Dallas 1936, wr. dism.); Carter v. Travelers Ins. Co., 132 Tex. 288, 120 S.W.2d 581 (1938); Texas Employers Insurance Association v. Hatcher, 365 S.W.2d 641 (Waco 1963, writ. ref. n. r. e.); Liberty Insurance Company of Texas v. Land, 397 S.W.2d 900 (Ft. Worth, writ. ref. n. r. e.); and Pan-American Fire & Casualty Company v. Reed, 436 S.W.2d 561 (Amarillo, writ. ref. n. r. e.). Without specifically reviewing each case, it is our view that they each, in general, point out the difficulty with which the appellee is faced here. In each case there was direct proof by other witnesses of the heavy activity of the workman while in the course of employment producing the strain or over-exertion which produced the heart attack or other injury, with the exception of the last cited case, where the circumstantial evidence practically amounted to direct proof. There is no such proof in our case. It could have happened, but that is not sufficient proof that it did occur. There is no evidence of probative force in this record to establish that Mr. Smith sustained a strain in the course of his employment which produced the heart attack. In this particular case, we see no need to consider the appellant's additional points.

The judgment of the trial court is reversed and judgment is here rendered that appellee take nothing.

PRESLAR, Justice (dissenting).

I respectfully dissent from the holding of the majority and would affirm this case by admitting the deceased's statement concerning his injury. A further reason for this dissent is to point up a basic weakness of the law in this area—where a man works alone and there are no witnesses to the cause of death. A phase of this law is wrong, because under it survivors of a man who works alone could have a perfect case, and yet recovery be denied because there were no witnesses. For all practical purposes under such circumstances, the man who works alone is denied death benefits and the employer is wasting his money in premium payments therefor. If the employee suffers an injury short of death, be it a broken finger or a totally disabling heart attack, he can tell about it and recover benefits. If, before he dies, he tells someone else about it, that's hearsay, and there are no benefits. In brief, all findings of the jury in this case find support in the evidence and the inferences therefrom, except that the vital evidence of the "the injury"—the sudden onset of pain while manipulating equipment—is held to be inadmissible by the majority. The writer would hold this evidence admissible as part of the res gestae and an exception to the hearsay rule. Does it not come down to the trustworthiness of his account of his

injuries? Is he more to be believed when seeking money benefits or when, as here, he is seeking to stay alive? Compensation benefits are for injuries received in the course of employment; the search here is for the truth of whether there was injury on the job. We have been told that there was such an injury by the man who suffered it. Under the circumstances by which the story comes to us, is it worthy of belief? Standing uncontradicted, should it be relied upon in a court of law as proof of the fact of injury?

Having judicially relieved myself of any shortcomings of the law, and with no further regard for same, the writer submits that the evidence is admissible under the safeguards set out by the Supreme Court in two cases relied upon by the majority— Truck Insurance Exchange v. Michling, and Hartford Accident and Indemnity Company v. Hale.

In *Michling* the court quoted at length from Wigmore in his work on Evidence, 3rd Edition, § 1747, on the question of what are the general rules governing the admission of hearsay statements as res gestae:

" 'This general principle is based on the experience that, under certain external circumstances of physical shock, a stress of nervous excitement may be produced which stills the reflective faculties and removes their control, so that the utterance which then occurs is a spontaneous and sincere response to the actual sensations and perceptions already produced by the external shock. Since this utterance is made under the immediate and uncontrolled domination of the senses, and during the brief period when considerations of self-interest could not have been brought fully to bear by reasoned reflection, the utterance may be taken as particularly trustworthy (or, at least, as lacking the usual grounds of untrustworthiness), and thus as expressing the real tenor of the speaker's belief as to the facts just observed by him; and

may therefore be received as testimony to those facts. * * *'

"In § 1750 he sets out the requirements as follows:

" '(a) Nature of the Occasion. There must be some *occurrence, startling enough* to produce this nervous excitement and render the utterance spontaneous and unreflecting. * * *'

" '(b) Time of the Utterance. The utterance must have been *before there has been time to contrive and misrepresent, i. e.,* while the nervous excitement may be supposed still to dominate and the reflective powers to be yet in abeyance. This limitation is in practice the subject of most of the rulings.

" 'It is to be observed that the statements *need not be strictly contemporaneous* with the exciting cause; they may be subsequent to it, provided there has not been time for the exciting influence to lose its sway and to be dissipated. * * *

" 'Furthermore, there can be *no definite and fixed limit* of time. Each case must depend upon its own circumstances.

" '(c) Subject of the Utterance. The utterance must *relate to the circumstances of the occurrence preceding it.* * * *' "

The court then makes the statement which distinguishes that case from ours:

" * * * the hearsay statement of Mrs. Michling is the only evidence of the event which gives rise to the statement. A hearsay statement, as res gestae, is admitted as an exception to the hearsay rule because it is made under circumstances which raise a reasonable presumption that it is the spontaneous utterance of thought created by or springing out of the occurrence itself and, so to speak, becomes a part of the occurrence."

In our case, the event is established by independent proof, the testimony of the doctor that a heart attack occurred. This event gave rise to the hearsay statement that it occurred during the manipulation of some equipment and was accompanied with a sudden pain. The account of how it happened sprang out of the happening—the event. The court then goes on to say:

"As said by Professor Wigmore, for a statement to come within the doctrine of res gestae it must be made as a result of some startling occurrence which renders the utterance spontaneous and unreflecting but that is not to say that the startling occurrence itself may be proven by the statement alone."

The "startling occurrence" here is a heart attack by a man who had a history of questionable heart trouble dating back to 1959, who had "been checked time and time again with electrocardiograms", and had been sent to a heart specialist on a prior occasion. As noted by the majority, the doctor is positive that the attack occurred just before the man came into his office. He was apparently well when seen by three different witnesses prior to 9:00 o'clock. Within an hour he was home "nervous and upset", and thirty minutes later was at the doctor's office "complaining of severe chest pains in the left side of his chest, left shoulder and running up into the left jaw. He was quite apprehensive and apparently in quite a bit of distress, anxiety and marked pain." In the writer's opinion he was under the influence of an occurrence, startling enough to produce his nervous excitement and render the utterance spontaneous and unreflecting when he told the doctor "he had come in from the job at which place he was working, and was manipulating some equipment and had this sudden onset of severe pains." In Michling the court cited, with authorities, the proposition that it is generally held that in passing upon the admissibility of a statement offered as a part of the res

gestae the trial court has considerable discretion. I do not think the trial court abused his discretion in this case.

Another distinguishing feature of this case from Michling and Hale is that here there is no conflicting evidence as to the decedent's statement. As to its trustworthiness, there is no reason not to believe it. In Michling and Hale, the court had evidence contrary to and discrediting the statements. In Michling, the statement was made to the wife that he had hit his head on an iron bar on the dozer he was operating. There was evidence from his employer's records that Michling did not work on the day of the alleged occurrence, and that none of the employer's dozers were in operation that day. Also there was evidence that there was no such iron bar on the dozer. In Hale, the statement was to a supervisor by Hale that he had been struck by the counter-balance on a pumping unit. He exhibited injuries to his groin, buttocks and lower ribs and was hospitalized for about a week. Some ten days after his discharge from the hospital he died of a heart attack. The trustworthiness of his statement was in conflict with an inspection of the pumping unit—that it was not running, and shoe prints found at the scene were not where Hale said he was standing. The court held that the statement did not meet the requirement of the res gestae requirement because there was no independent proof of the incident or occurrence to which the statements relate. In our case there was independent proof of the incident, the heart attack, as to which the statement was made. Also, the court, in Hale, said that the rationale of its decision in Michling was that to be admissible as res gestae, the statement must be shown to have been a spontaneous reaction to an exciting event, and the statements themselves cannot be used to prove the exciting event. In our case, the exciting event of the heart attack was independently proved, and the statement as to where and how it happened was not used to establish it. Nervous and upset, com-

plaining of severe pain, quite apprehensive and apparently in quite a bit of distress, anxiety and marked pain, a man with a history of heart trouble told what he was doing and what he experienced when the exciting event occurred.

Being of the opinion that the evidence is admissible or, in any event, that the trial judge did not abuse his discretion in admitting the statement, I would affirm the judgment.