TEXAS EMPLOYERS' INSURANCE
ASSOCIATION, Appellant,

v.

Milton Carl SMITH, Appellee.

No. 8669.

Court of Civil Appeals of Texas,
Texarkana.

Oct. 30, 1979.

C. Cary Patterson, Atchley, Russell, Waldrop & Hlavinka, Texarkana, for appellant.

George McWilliams, Hubbard, Patton, Peek, Haltom & Roberts, Texarkana, for appellee.

CORNELIUS, Chief Justice.

Texas Employers' Insurance Association brought this suit to set aside a worker's compensation award rendered by the Industrial Accident Board in favor of Milton Carl Smith. Texas Employers' sought to avoid liability on the ground that Smith's disability was caused solely by pre-existing conditions, diseases and other problems not related to his employment, and also that he had suffered a prior compensable injury which caused or contributed to his disability. In response to special issues, the jury found that Smith was injured on March 9, 1977, while in the course of his employment, and that the injury was a producing cause of total and permanent incapacity. Based upon the verdict the trial court entered judgment in favor of Smith for $27,985.81, together with $3,281.10 accrued medical expenses.

Smith began working for Talon Construction Company in November of 1976 as a heavy equipment mechanic. According to his testimony, he was injured when he was repairing a maintainer for Talon and he stepped in some oil which had accumulated on the floor of the maintainer cab, lost his footing and fell backwards hitting his back on the machine. He was able to work only brief periods the next several days after the accident, and ultimately was forced to consult his family physician, Dr. McGee, who in turn referred him to Dr. Saxton, a neurosurgeon. Dr. Saxton determined that Smith was suffering from spondylolysis with spondylolysthesis (that is, an abnormal vertebra that did not fit with other vertebrae) and performed a laminectomy to remove the abnormal joint. Although there was testimony that Smith's condition might have been congenital to some extent, there is ample evidence to support a finding that the fall on the maintainer caused an injury.

The alleged accident was not witnessed. Smith testified that he informed his foreman, Charles Fisher, of the injury and told him that he was going to take the rest of the day off. Fisher testified that Bill Kunkel, the general superintendent for Talon, was also informed of the accident. Fern Dowd, a secretary for Talon, testified that she learned of the accident some three weeks after it happened, and based upon information she received from Bill Kunkel, she filled out an accident report.

The first three points of error complain of the trial court's exclusion of certain evidence. Essentially Texas Employers' defense was that Smith's disability was due to previous conditions and injuries, and that he had not actually suffered a job related accident at Talon. In order to cast doubt on Smith's testimony that he had in fact suffered an injury at Talon, Texas Employers' unsuccessfully sought to introduce portions of the depositions of Drs. McGee and Saxton.

Included in the excluded portions was this testimony by Dr. McGee:

"Q. On this date did Mr. Smith relate any injury to you?

A. He could have but I did not document it at that time. He did relate that he did have a back injury on the first meeting but I did not document how it happened.

Q. Okay, did he relate any back injury on the second time you saw him in 1977?

A. As previously stated, he could have but I did not document it.

Q. Doctor, I note that you testified that Mr. Smith may have related an injury in March of '77 or that he may not have, that you just simply do not have it documented. Is that correct?

A. That is correct.

Q. Do you know whether or not you even asked how he hurt his back?

A. I quite frequently don't ask the patient exactly how they sustained their injury.

Q. And Doctor, the extent of your notation regarding this March of 1977 back problem, what type of notation did you take? Perhaps a sentence or just a phrase?

A. Yes, I made a notation here that he was, in March 15 of 1977 that he was still complaining of low back pains that were radiating down his right leg, and as stated previously he was referred to Dr. Saxton.

Q. So, as to any detail regarding the history, you did not take that down?

A. That is correct."

The purpose of offering the quoted testimony was to raise an inference that Smith did not tell Dr. McGee that his back troubles were related to an accident at Talon, and since he did not do so it could be inferred that he did not actually suffer such an injury. The trial court excluded the evidence on the objection that, since a physician is prohibited from testifying to what the claimant told him about how the alleged accident occurred, except when that history is necessary to explain the physician's diagnosis,[1] the physician should also be prohibited from testifying about the claimant's *failure* to tell how the accident happened, i. e.,

that it was job related. We believe the trial court misapplied the rule. *Self serving* out of court declarations of a claimant are properly excluded as hearsay. 1 McCormick & Ray, Texas Evidence, § 786, p. 568 (2d ed. 1956). But any statement or conduct of a party *which is inconsistent with the position taken by him at the trial* is admissible as an admission, an exception to the hearsay rule. *Wirtz v. Orr*, 575 S.W.2d 66 (Tex.Civ.App. Texarkana 1978, writ dism'd); *Ledisco Financial Services, Inc. v. Viracola*, 533 S.W.2d 951 (Tex.Civ.App. Texarkana 1976, no writ); 2 McCormick & Ray, Texas Evidence, § 1121, p. 16; § 1122, pp. 20, 21; § 1141, p. 29; § 1148, p. 38; § 1152, p. 44 (2d ed. 1956). Nevertheless, we conclude that the exclusion of this evidence was not such an error as was calculated to produce an improper judgment, and that it was harmless. If, indeed, the testimony can be construed as indicating that Smith did not relate the facts of his injury to Dr. McGee, its probative value as showing a position on Smith's part inconsistent with his position at the trial is speculative at best, and we do not consider its exclusion to be such an error as to require a reversal.

■ Also excluded was this portion of Dr. Saxton's deposition:

"Q. Okay. Doctor, did Mr. Smith ever relate to you a different history any time subsequent to your initial treatment?

A. Not to me, no.

Q. Okay. Before we go any further, I see you're looking at a file here in front of you. Is that the file of Mr. Milton Smith?

A. Yes, it is. These are records kept in the ordinary conduct of my business and the notes are made at or about the time of the business.

Q. All right. And are these records kept in your custody?

A. They are.

1. See *Presley v. Royal Indemnity Ins. Co.*, 557 S.W.2d 611 (Tex.Civ.App. Texarkana 1977, no writ); *Travelers Insurance Company v. Smith*, 448 S.W.2d 541 (Tex.Civ.App. El Paso 1969, writ ref'd n. r. e.); and *Monks v. Universal Underwriters Insurance Co.*, 425 S.W.2d 431 (Tex.Civ.App. Tyler 1968, writ ref'd n. r. e.).

Q. All right. And, Doctor, does your file reflect a different history concerning Mr. Smith's initial history that he gave you on March 21st, 1977?

A. Yes.

Q. Okay. Would you relate to the Jury what this new history revealed.

A. On an insurance form information was obtained by one of my clerks or secretaries from either Mr. Smith or his wife or both that he injured his back while climbing up and down a maintainer. I do not know what a maintainer is and I did not get this history.

Q. Okay. Doctor, what is the date of this instrument that you're looking at?

A. April 13th, 1977.

Q. All right. Now what were the circumstances surrounding the gathering of this information?

A. I believe the patient called and stated that that was a workmen's compensation injury and that Texas Employer's Insurance Company should be billed and this additional history was given or volunteered at that time."

This testimony was properly excluded. Dr. Saxton was not attempting to testify directly to statements or acts on Smith's part which might constitute admissions. He was relating what his secretary had told him that Smith had told her. That does not qualify as an admission, but is pure hearsay and inadmissible. The records, if the proper predicate had been made, might have been admissible under the business records exception (Tex.Rev.Civ.Stat.Ann. art. 3737e), but they were not offered.

 The other points on appeal contend that the trial court erred in refusing to allow the introduction of evidence and the submission of special issues to the jury concerning what extent a previous compensable injury had contributed to Smith's present incapacity, as permitted by the 1977 amendment to Sec. 12c of Tex.Rev.Civ.Stat.

Ann. art. 8306. At the time of Smith's alleged injury, Sec. 12c provided as follows:

"If an employee who has suffered a previous injury shall suffer a subsequent injury which results in a condition of incapacity to which both injuries or their effects have contributed, the association shall be liable for all compensation provided by this Act, but said association shall be reimbursed from the 'Second Injury Fund' as hereinafter described, to the extent that the previous injury contributes to the combined incapacity."

After the injury, but before the Industrial Accident Board award or the filing of this suit, the 1977 amendment to Sec. 12c was adopted. It reads in part as follows:

"If an employee who has suffered a previous injury shall suffer a subsequent injury which results in a condition of incapacity to which both injuries or their effects have contributed, the association shall be liable because of such injury only for the compensation to which the subsequent injury would have entitled the injured employee had there been no previous injury; provided that there shall be created a fund known as the 'Second Injury Fund,' hereinafter described, from which an employee who has suffered a subsequent injury shall be compensated for the combined incapacities resulting from both injuries. . . ."

Thus, prior to the amendment the insurance carrier was liable to the claimant for the full compensation provided for his present incapacity and, in the case of specific injuries, was relegated to the second injury fund for reimbursement to the extent a previous injury contributed to that incapacity. Under the 1977 amendment, the carrier is entitled to present evidence and obtain jury findings on the extent to which the previous injury contributed to the present incapacity, and is only liable for that percentage of incapacity caused by the later injury, with the claimant being relegated to the second injury fund for any additional compensation to which he may be entitled. *Texas Employers' Ins. Ass'n v. Haunschild*, 527 S.W.2d 270 (Tex.Civ.App. Amarillo

1975, writ ref'd n. r. e.). See also Sartwelle, *Worker's Compensation, Annual Survey Of Texas Law*, 32 Sw.L.J. 304 (1978). The question we must determine is whether the former or the present version of Sec. 12c governs this case. The answer to the question depends upon whether the change in the statute is regarded as affecting substantive rights or as affecting only the remedy. If the change in the statute is substantive, it will not be given retrospective application. If the change affects only the remedy, it will operate retroactively to alter the remedy for the right which arose under the former law. 53 Tex.Jur.2d Statutes, § 28, pp. 51, 52 and § 29, pp. 53–55.

While the change in Sec. 12c, on the surface, appears to affect only the remedy, in reality it worked a substantive change in the law because it reinstated the defense of prior injury contribution which had not been allowed under the former version. Consequently, it will not be retroactive, and the version of the statute in effect at the time the cause of action arose, i. e., the time of injury, controls. *Lubbock Independent School District v. Bradley*, 579 S.W.2d 78 (Tex.Civ.App. Amarillo 1979, writ ref'd n. r. e.). The trial court therefore properly refused to submit the requested issues.

The judgment of the trial court is affirmed.