**CONTINENTAL INSURANCE COMPANY,**
Appellant,

v.

**Hattie Mae MARSHALL, Appellee.**

No. 6357.

Court of Civil Appeals of Texas,
El Paso.

Feb. 20, 1974.

Rehearing Dismissed as Moot—Case
Settled March 27, 1974.

---

1. See Ocker v. State, Tex.Cr.App., 477 S.W.2d 288, and Miller v. State, Tex.Cr.App., 472 S.W.2d 269.

Crenshaw, Dupree & Milam, Cecil C. Kuhne, J. Orville Smith, Lubbock, for appellant.

Daniel D. Sullivan, Andrews, Joe K. McGill, Seminole, for appellee.

## OPINION

OSBORN, Justice.

This is a workmen's compensation case in which the Appellee, a widow, recovered death benefits. The jury found that Mrs. Marshall's husband, John Thurston Marshall, had a heart attack on December 22, 1970, which occurred in the course of his employment by Atlantic Richfield Company and that the heart attack was a producing cause of his death. The jury also found that the heart attack was not caused solely by preexisting heart disease. We affirm the judgment of the trial Court.

Mr. Marshall, who was fifty-nine years old at his death, had worked for Atlantic Richfield Company since February, 1944. He was a pump station operator in Gaines County at the time of his death. His duties consisted of operating equipment to receive oil at the station and then pumping it from storage tanks into other lines to be transferred to another storage area. His work included normal maintenance around the station, checking gauges and opening and closing valves to control the flow of oil.

In 1958, Mr. Marshall had a heart attack which caused him to be hospitalized twenty-three days and off from work thirteen weeks. He continued to take a blood thinner and tranquilizers from 1958 until his death, and always carried nitroglycerin tablets with him. According to the hospital records in February, 1969, he seemed to black out or pass out while pulling on a 12″ gate valve with considerable force to open it. He was diagnosed as having postural hypotension, with no acute cardiovascular problem.

On December 22, 1970, Mr. Marshall went to work at approximately 3:00 P.M. and had talked to his wife, apparently by telephone, at about 7:30 P.M. and he was feeling fine. When his relief operator came on duty about 10:30 P.M. he found Mr. Marshall lying next to a gate valve beside one of the storage tanks. The valve was partially opened and Mr. Marshall was dead. The evidence, including pictures, established that the oil tanks were enclosed by a mound of dirt about 4′ or 5′ high which served as a fire wall. There were nine concrete steps up the walkway to the top of the fire wall and then steps down into the area where the tank was located. The valve next to which Mr. Marshall was found had a "cheater pipe" laying beside it for use when needed in opening the valve, but there was no indication it had been used on this occasion.

Vernon McQuerry, the operator who found Mr. Marshall, and the only plant employee to testify, said that in switching tanks it was necessary to open two gate valves and close two other gate valves. He stated this involves turning a wheel with your hands and normally this was an easy task but sometimes it was hard when there was pressure on the valve. He also said the "cheater pipe" might be needed to crack the valve out of the seat or gate, but ordinarily the valve was easy to open.

The Appellee also presented the testimony of two doctors. Dr. Dow, the Marshalls' family physician, said the deceased had a myocardial infarction in 1958 which he attributed to arteriosclerosis. This caused some damage to the heart. Subsequent-

ly he released the patient to return to work, but cautioned him about exertion or any undue work load. He described his treatment after the blackout incident while opening a valve in 1969 and gave the following testimony:

"Q All right. Now, Doctor, would ordinarily—ordinarily would the fact that Mr. Marshall had been opening this gate at the refinery and had been a heart patient of yours before, would it cause you to be suspicious that the exertion of opening the gate might have brought about another heart attack?

A Yes.

Q All right. Doctor, would a patient who suffered from heart damage by myocardial infarction be more apt or more—would he be a greater risk at having another heart attack brought upon by exertion than a person who had never had a heart · attack?

A I think so."

But he ultimately concluded that without an autopsy his opinion as to the cause of death would be pure speculation.

Dr. Inayat Ibahim Lalani, a Board certified surgeon, testified in answer to a hypothetical question, that in his opinion Mr. Marshall " * * * died of another attack of myocardial infarction brought on by the exertion of his job." He acknowledged that he was aware of the stairs the deceased crossed to reach the tank and had seen pictures of the valves that would be opened at the plant. On cross-examination the doctor said that he had assumed in the hypothetical question that opening the valve required a considerable amount of muscular exertion, although that fact was not actually included in the question, and no proof was made of that fact. His testimony was then developed as follows:

"Q As a matter of fact, if it should turn out, however, that all he did was open a valve that was easy to turn,

just a matter of twisting your fingers, that wouldn't have caused his heart attack?

A If it was that easy it probably wouldn't. But it still would have taxed his heart more than walking on level ground in taking these steps and then opening the valve. It is a matter of degrees.

Q You saw the steps. He did this sort of work for twelve years after that first attack. Does that indicate to you that probably, in all probability, this was not excessive stress and strain?

A During those twelve years the arterial system of the heart may have deteriorated. That is one possibility.

Q As a matter of fact, it is likely, isn't it, that if a man has had a heart attack, and he has taken medicine all this time, the likelihood is that somewhere down the line he is going to have that second one and he won't recover from it, isn't that a real likelihood?

A Yes. But the question is in all probability what brought on his death. I am saying the exertion that he had—had to have would—would be in most probability be the—the possibility—be the cause over and above —attributing to his preexisting cardiovascular disease. That is all I am trying to say.

Q Are you telling the jury that he probably would not have had a heart attack if he hadn't walked up those stairs that day?

A He would be less likely to die.
  *     *     *     *     *     *

Q * * * Are you telling the jury that if he hadn't opened that valve that night he probably would not have had that heart attack?

A Statistically, now—Only statistically, now, anything could have hap-

pened. Most probability his death was contributed to by the exertion he had. So, if he had the night off and sitting in his living room and reading a newspaper he would be less likely to suffer a myocardial infarction."

The Appellate did not present any witnesses, and the case was closed after the Plaintiff-Appellee rested.

By its first four points of error the Appellant contends that the trial Court erred in admitting into evidence the opinion testimony of Dr. Lalani that Mr. Marshall died from a heart attack and that it was probably caused by a myocardial infarction brought on by overexertion because he assumed facts which were not in evidence, and further that the trial Court erred in not granting its motion for instructed verdict and in submitting to the jury Special Issue No. 2 which inquired whether or not the heart attack was in the course of Mr. Marshall's employment.

■ We accept as correct the rule cited by Appellant that where an expert witness is testifying not from personal knowledge but is giving opinion testimony in response to a hypothetical question, that the facts recited in the hypothetical question and upon which the witness' opinion testimony is based should be established in the evidence by testimony of other witnesses. But it must be noted that in cases upon which the Appellant relies, such as Sabelli v. Security Insurance Company of New Haven, 372 S.W.2d 348 (Tex.Civ.App.—Austin 1963, writ ref'd n. r. e.); Gulf Oil Corporation v. Walker, 288 S.W.2d 173 (Tex.Civ. App.—Beaumont 1956, no writ); and Schaff v. Shepherd, 196 S.W. 232 (Tex. Civ.App.—Texarkana 1917, writ ref'd), objection was made to the hypothetical question at the time the question was asked.

■ The answer to the hypothetical question in this case was received without objection, because at the time the question was asked and the answer made, the question had not asked the doctor to assume that exertion was required to open the valve, and counsel for the Appellant had no way to know that the doctor was assuming facts which were not in the hypothetical question. After the doctor admitted on cross-examination the improper assumption, no motion was made to strike the answer to the hypothetical question. Instead Appellant waited until all the evidence was concluded and filed a motion for instructed verdict, and then after entry of judgment filed a motion for new trial and for the first time complained of the answer to the question which was based upon an assumption without proof in the evidence.

In such a case the objection is not timely made and error is not presented on appeal. In Valdez v. O'Connor, 17 S.W.2d 835 (Tex.Civ.App.—San Antonio 1929, no writ), complaint was made to leading questions after the witness had answered. In passing upon the issue, the Court said:

"There was no motion to strike the answers of the witness to the questions, which were clearly leading, and which were answered before any objection was made. In that situation appellant's remedy lay in a motion to strike, and failing to make that motion he waived his right to complain."

Likewise, in Poole v. State Highway Department, 256 S.W.2d 168 (Tex.Civ.App.— Fort Worth 1953, writ dism'd), the Court said: "Where testimony is in the record before objection thereto is made and sustained and no motion is made to strike it out, it is before the appellate court for all it is worth." To the same effect is the holding in Battles v. Adams, 415 S.W.2d 479 (Tex.Civ.App.—Austin 1967, writ ref'd n. r. e.).

In State v. Landers, 377 S.W.2d 777 (Tex.Civ.App.—Tyler 1964, no writ), error was assigned in a motion for new trial about the receipt in evidence of a deed which had been received in evidence without objection. In passing on this issue, the Court said:

"It appears from the record that this deed was admitted in evidence after hav-

ing been proven up by appellees and after cross-examination of Mrs. Calloway by attorneys for appellants and no objection whatever was made to its admission, nor was a motion made to suppress the same after its admission. The first complaint of admission of this deed is found in the amended motion of appellants for a new trial, which motion was never acted upon by the trial court but was allowed to remain filed in the trial court until it was overruled by operation of law. In this situation of the record, the authorities are uniform that this court cannot entertain an assignment of error which complains of the admission of evidence in the trial court where no objections to such evidence was made."

Thus it appears that the trial Court did not err in receiving the answer to the hypothetical question, nor in overruling the motion for instructed verdict, nor in submitting Special Issue No. 2 to the jury. Even if the doctor did improperly assume that opening the valve caused physical exertion, his testimony was such that the jury could conclude that the physical exertion of climbing the steps in his then existing physical condition, which included prior heart damage, probably did cause the heart attack and death of Mr. Marshall. This conclusion could be drawn from all the testimony of the doctor, whether the opening of the valve required unusual exertion or not.

■ Certainly it is a close question as to whether merely climbing the steps would constitute unusual exertion or strain, but it is as Dr. Lalani said "a matter of degrees." This is more particularly true with a person who has previously suffered permanent heart damage than a person who has no prior history of such a condition. The facts in this case are very similar to those in Baird v. Texas Employers' Insurance Association, 495 S.W.2d 207 (Tex.Sup. 1973), where the employee had a prior mild congestive heart failure and subsequently died on the job while doing nothing more than climbing a stepladder and shaping a piece of conduit. Like the Baird case, the question is close. And while we might be more inclined to accept the conclusion of Dr. Dow, rather than Dr. Lalani, it is not our prerogative to substitute our opinion for that of the jury. From all the facts in each case it would seem that Mr. Marshall probably performed more strenuous work on the date of his death than did Mr. Baird and the decision by the Texas Supreme Court that the facts in the Baird case raised an issue for the jury's determination is controlling here. The Appellant's first four points are all overruled.

■ The Appellant's last three points present issues concerning the Court's charge, and particularly the definition of "heart attack in the course of employment," and the failure to submit an issue as to whether the heart attack was an accidental injury, and whether it was the result of an undesigned or unexpected occurrence, traceable to a definite time and place. Special Issue No. 1 was taken from Pattern Jury Charge 29.02, and Issue No. 2 from Pattern Jury Charge 29.04, and Issue No. 3 from Pattern Jury Charge 29.05. All three issues were answered in the affirmative. We believe those issues properly presented the issues for the jury's determination. This is not a case where the alleged event causing death occurred over a period of several days or weeks, and therefore the conclusion reached in Olson v. Hartford Accident and Indemnity Company, 477 S.W. 2d 859 (Tex.Sup.1972), is not applicable here. Although the proof must establish that the accident or occurrence is traceable to a definite time and place, there has never been a requirement that there be a jury finding of an accident or occurrence, traceable to a definite time and place. Midwestern Insurance Company v. Wagner, 370 S.W.2d 779 (Tex.Civ.App.—Eastland 1963, writ ref'd n. r. e.); Home Insurance Company v. Burkhalter, 473 S.W. 2d 318 (Tex.Civ.App.—Texarkana 1971, no writ). The Appellant's fifth, sixth and seventh points are overruled.

The judgment of the trial Court is in all things affirmed.