Beatrice HENDERSON, Petitioner,

v.

The TRAVELERS INSURANCE COMPANY, Respondent.

No. B–5886.

Supreme Court of Texas.

Dec. 1, 1976.

Rehearing Denied Dec. 31, 1976.

James W. Mehaffy, Jr., Beaumont, for petitioner.

Strong, Pipkin, Nelson, Parker & Powers, John G. Bissell, Beaumont, for respondent.

McGEE, Justice.

This is a suit brought by Mrs. Beatrice Henderson for death benefits under the workmen's compensation law. Her husband died of a heart attack on the employer's premises soon after a workday had ended. The trial court instructed a verdict for the defendant at the close of the plaintiff's evidence. The court of civil appeals affirmed. 533 S.W.2d 407. We reverse the judgment of the court of civil appeals and remand the case to the trial court.

It was stipulated that Owen Henderson died at the Texaco Port Arthur Refinery after having worked his regular shift. The evidence reveals that on January 16, 1973 Henderson arrived on the job at 7:30 in the morning. It was also shown that Henderson operated an air hoist or air tugger. An "air tugger" was described as a winch which is powered by pressurized air. The function of the air tugger was to hoist materials and equipment up to laborers working on various levels of a building under repair by utilization of a cable and pulley system. It was Henderson's job to remain at the bottom of the structure under repair to operate the air tugger, raising and lowering materials as necessary. It was shortly after Henderson had worked his full shift on January 16, 1973 that he suffered a heart attack on the employer's premises and died.

■ Petitioner's position is to the effect that the trial court erred in granting defendant's motion for an instructed verdict because the evidence raised fact issues which required submission to a jury. Conversely, the respondents contend that an instructed verdict was proper because there was no evidence that Henderson suffered any kind of strain; nor was there any medical evidence offered that strain of any kind precipitated Henderson's heart attack. In an instructed verdict case, our task is to determine whether there is any evidence of probative force to raise fact issues on the material questions presented. Upon review, we must consider all of the evidence in its most favorable light in support of the plaintiff's position and discard all contrary evidence and inferences. *Anderson v. Moore*, 448 S.W.2d 105 (Tex.1969); *Triangle Motors of Dallas v. Richmond*, 152 Tex. 354, 258 S.W.2d 60 (1953). When reasonable men may differ as to the truth of controlling facts, a jury issue is present. *Najera v. Great Atlantic & Pacific Tea Co.*, 146 Tex. 367, 207 S.W.2d 365 (1948). *See*, 3 McDonald, Texas Civil Practice, Sec. 11.28.2 (1970).

■ The workmen's compensation law does not provide for health insurance but is purposefully designed to compensate an employee for incapacity flowing from an accidental personal injury while engaged in the performance of his employment. As was stated in *Whitaker v. General Insurance Co. of America*, 461 S.W.2d 148, 151 (Tex.Civ. App.—Dallas 1970, writ ref'd n. r. e.):

"The mere fact that an employee dies while on the premises of his employer, and during working hours, is not sufficient. It is incumbent upon one seeking to recover death benefits under the law to prove that the deceased sustained an injury which caused or contributed to cause the death."

However, in *Baird v. T. E. I. A.*, 495 S.W.2d 207, 211 (Tex.1973), this court recently reaffirmed that a heart attack caused by strain or over-exertion is an accidental injury to the physical structure of the body within

the meaning of the Workmen's Compensation Act. With reference to the causal connection required to be established between the exertion and the heart attack, the court in *Baird* went on to conclude that ". . . in the very nature of these cases, the evidence is most often largely circumstantial or based on answers by medical witnesses to hypothetical questions." The crucial evidence produced in the case now before us when viewed in the light most favorable to the plaintiff is substantially as follows:. Deposition testimony of Henderson's supervisor, Joseph Dawson, established Henderson's work activities on the day in question. Dawson testified:

"Q What was Mr. Henderson's job?

"A He was running an air hoist or air tugger."

. . . . .

"Q Okay. Now, what time of day did Mr. Henderson come to work that morning?

"A He was there at 7:30.

"Q All right, he began his regular shift?

"A At 7:30."

. . . . .

"Q Mr. Dawson, did Mr. Henderson work at this job as operating that air tugger all during the day, that is, eight hours of his shift on the day he died?

"A Yes, sir, that was his primary job."

Donald LeBlanc, a co-worker with Mr. Henderson, testified by deposition as to the normal duties of an "air tugger operator." LeBlanc had not worked with Henderson on the day of Henderson's death, but he had operated an air tugger on numerous occasions. LeBlanc testified as follows:

"Q Assume with me that Mr. Henderson was working this job of operating the air tugger by himself. Is it a physically strenuous or demanding job?

"A Definitely so. Most of the time you are working around people and your loads could be endangering the people that you're working around if you're not real careful what you're doing. . . . You've got to listen to the whoops and hollers, and we've got certain signals for up and down or hold it. And there's a bunch of people and everybody hollering, and so you can't really see actually where your load is.

"Q How about just the physical strain, that is, whether you have to pull or push or use your muscles any?

"A If you're just running a lever, no. But that ain't all there is to running an air tugger. You've got to pull cable, keep it straight, and like I say, I've seen very few times when people have sat down and run an air tugger. It's very few and far between.

"Q How about just moving around; do you have to do a good bit of moving from one place to another?

"A Every move you make, every time you let off on that air tugger, you've got to move to the front and pull it.

"Q Is that something you can do just kind of leisurely . . .?

"A Well, you've got people hollering at you all the time and the bosses, and also you know that someone is going to be in a strain if you don't go up or come down on the other end, so you are usually moving pretty good on an air tugger.

"Q How about any mental strain or mental pressure; is there any of that on that particular job?

"A Again, it depends on the type of work you're doing. Personally, a lot of times. there's a lot of mental strain because you are working with people and real close, and the wrong move could hurt someone."

. . . . .

"A So you are worried about somebody being under you at all times. Sure, it's a strain, unless you're just picking up a bucket or something when no one is around. But it is definitely a strain.

"Q Can you work at your own pace and at your own speed in doing the job that Mr. Henderson was doing or not?

"A Well, if you're running an air tugger, sometimes you may make three lifts a day, but most of the time it's continually up and down all the time. And when the people flag you to get up, you get up. And when they flag you to get down and pull up slack, you go to the front and you pull slack."

We believe there is at least some evidence presented which raises an issue as to whether or not Henderson suffered any strain or exertion while at work.

■ However, an additional aspect of this type of action which must now be considered is whether there is any evidence in this record which would raise a fact issue as to whether or not any strain or exertion suffered by Henderson was a producing cause of his heart attack. Dr. Gwynne performed an autopsy on Henderson on January 17, 1973. The doctor indicated that Henderson had an enlarged left ventricle and Dr. Gwynne further testified by deposition in the following fashion:

"Q Doctor, assume that the history that you got second hand about Mr. Henderson's death and the circumstances surrounding it was correct, and then taking into account your autopsy and the findings, do you have an opinion based upon reasonable medical probability as to what the immediate cause of Mr. Henderson's death was, medically speaking?

"A I have an opinion as to the most probable cause of death in this case.

"Q All right, sir.

"A As I indicated in my report to the Judge and in my completed protocol, I feel the most probable cause of death was cardiac arrhythmia, irregularity in the action of the heart,

producing inadequate flow of blood to the heart itself and to other vital organs; this cardiac arrhythmia resulting from insufficient blood supply and consequently insufficient oxygen supply to the muscle of the heart, . . . This reduction in blood flow to the muscle of the heart would be more likely in the presence of an enlarged left ventricle, a left ventricle enlarged because of high blood pressure, which commonly occurs in high blood pressure. Although I don't have a record of the man's blood pressure, this would be likely—high blood pressure would be likely in a man with nodular hyperplasia of the adrenal cortices, as I described in my protocol.[1]

"Q What is the exact relationship between physical exertion then and this heart arrhythmia, or how does physical exertion get us to heart arrhythmia?

"A [I]f we have a man with a borderline blood supply to his heart, and then he exerts himself, maybe just a little bit, you see, and then his heart needs to speed up and needs to work harder. . . . Then from having barely enough, he goes to having not quite enough, and then that can precipitate this sort of thing, and will be associated with the development of a thrombus and myocardial infarction, or an occlusion, a functional or a myocardial occlusion.

"Q How about the arrhythmic situation here?

"A As I say, under conditions of increased need for oxygen in the poorly supplied myocardium, they can go from barely enough oxygen and nutrients getting to the heart to not quite enough, and then the not quite enough can produce a fatal cardiac arrhythmia, which I think is probably what happened here."

---

1. It should be noted at this point that it is not required that the injury in the course of employment be the sole cause of disability or death, and that a predisposing bodily infirmity will not preclude compensation. *See, Texas Indemnity Ins. Co. v. Staggs,* 134 Tex. 318, 134 S.W.2d 1026 (1940).

*See, Insurance Company of North America v. Kneten*, 440 S.W.2d 52, 54 (Tex.1969).

Additionally, the pertinent deposition testimony of Dr. Joe Alex DeLeon, a cardiologist, was subsequently read into the record. Dr. DeLeon was asked to give his opinion about the cause of death and he responded as follows:

"Q Assume for the purpose of the question further that operating the air hoist and greasing the bolts were things which did not involve great physical stress, but did involve a moderate amount of physical movement or moving around—and again getting back to my question of defining a 'producing cause' as simply being one of the things however many there may have been that brought about the event. Then, in your opinion would the physical activity prior to his death have been one of the or a producing cause of his death in your judgment?

"A Yes, sir, it could be.

"Q All right, sir. Is that based on reasonable medical probability?

"A Yes, sir, to the best of my knowledge."

On cross-examination, Dr. DeLeon stated that "[g]enerally speaking most people die either from physical activity or work —tennis, working out or doing other enjoyable things. . . . So, that if the man had been working, this could have produced his enlarged myocardium which could have led to sudden arrhythmia and sudden death." We believe that this is some evidence that the heart attack was caused by Henderson's strenuous work on the day of his death.

It was revealed that Henderson had suffered a prior on-the-job injury in 1969. Because of the injuries sustained at that time, Henderson was placed on "light" or "restricted duty" by his employer. However, Donald LeBlanc, who was Henderson's co-worker, was asked the question as to whether or not Texaco considered the operation of an air tugger to be a "light duty" job. In responding, LeBlanc stated: "Definitely not, not all air tuggers."

The cases which respondents rely most heavily upon are *Olson v. Hartford Accident & Indemnity Company*, 477 S.W.2d 859 (Tex.1972), and *Whitaker v. General Insurance Company of America*, 461 S.W.2d 148 (Tex.Civ.App.—Dallas 1970, writ ref'd n. r. e.). However, we do not find those authorities controlling of the present controversy. In *Olson*, the facts revealed that the plaintiff did not perform any manual labor to speak of and previous to his heart attack, the plaintiff was not subjected to any particular physical strain or over-exertion. Further, recovery was sought under the theory that the plaintiff had suffered three or four irritating and frustrating job experiences over a 19-day period which together allegedly precipitated the heart attack (i. e. mental stimuli). Finally, the court noted that no attempt was made to connect any one of the frustrating experiences to the heart attack suffered by the plaintiff. *Olson*, supra at 859. Such is obviously not the same situation as the one now before us. As for the court of civil appeals decision in *Whitaker*, we also regard it as being clearly distinguishable from the instant case. In *Whitaker* the court upheld the trial court's action sustaining the insurance company's motion for judgment *non obstante veredicto*. The court held that there was no evidence to support a jury finding that the heart attack the plaintiff had suffered was an injury sustained in the course of his employment and that such injury was a producing cause of plaintiff's death. In reaching its decision, the court reviewed the following testimony elicited from an individual who worked with Whitaker on the day of his death:

"Q. All right. Were you there at all times except for your lunch hour?

"A. Yes, sir, I was.

"Q. During that time that you were there, both morning and afternoon, did he (Whitaker) ever do anything strenuous, such as change a tire?

"A. No, sir."

The plaintiff in *Whitaker* had suffered an earlier heart attack a few months prior to his going to work at the gas station. Dr. Markowitz, after testifying concerning his treatment of Whitaker for the previous heart condition and attack, and based upon a hypothetical question concerning the activity engaged in by Whitaker at the service station, was asked to state whether or not the man simply suffered another attack or whether he might have suffered an injury which caused an attack. The doctor stated that there was no way to give such an opinion. He testified that without an autopsy he was not 100 percent sure that the second attack killed Whitaker but he would have to assume that he died of a heart attack. The court of civil appeals also found that other medical testimony elicited was improperly based upon facts not in the record. Under the record in *Whitaker*, the court concluded that there was no evidence of probative force that Mr. Whitaker was called on to perform any work that required strenuous exertion or strain. The court announced that the limited medical testimony offered by the plaintiff was too speculative to constitute probative evidence and upheld the trial court's judgment *non obstante veredicto*. Again, we believe the fact situation presented in *Whitaker* to be substantially different from the situation presently before us. We find that the other cases relied upon by the respondents are similarly distinguishable.

In conclusion, it is always difficult in this type of case to answer the problem of whether the evidence, most often circumstantial, and the inferences drawn therefrom, present issuable facts. "There is no precise rule to measure probative force and by which to decide if questions of fact are raised by the evidence." *Baird v. T. E. I. A.*, 495 S.W.2d 207, 211 (Tex.1973). In the case now under consideration, it was revealed that Henderson had worked a full shift doing a job that could often be strenuous in nature. We have testimony from the doctor who actually performed the autopsy on Henderson to the effect that the cause of death was, in his opinion, cardiac arrhythmia. This medical testimony was fur-

ther substantiated by Dr. DeLeon. As a result, given this record, we cannot say that the evidence offered to prove the vital facts is so weak as to do no more than create a mere surmise or suspicion of their existence. *See, Seideneck v. Cal Bayreuther Associates*, 451 S.W.2d 752, 755 (Tex.1970); *Joske v. Irvine*, 91 Tex. 574, 44 S.W. 1059 (1898); Calvert, *"No Evidence" and "Insufficient Evidence" Point of Error*, 38 Texas L.Rev. 361 (1960). We hold that the circumstances thus shown by the evidence are such as to call for a factual determination of whether Henderson suffered an injury in the course of his employment, and, if so, whether such was a producing cause of his death.

Accordingly, we reverse the judgment of the court of civil appeals and remand this cause to the trial court.

Concurring opinion by REAVLEY, J., in which STEAKLEY, J., joins.

Dissenting opinion by GREENHILL, C. J., in which DENTON, J., joins.

REAVLEY, Justice (concurring).

Mrs. Henderson is entitled to receive death benefits under the workmen's compensation law if her husband's death occurred *when it did* because of an injury sustained in the course of his employment. A heart attack precipitated or brought on by the activity of the job is an injury sustained in the course of employment. A claimant must prove activity and then prove that the activity was a cause of this particular attack or injury. The proof cannot stop at possibility—nor need it reach certainty; it is enough to prove the probability. The claimant need only produce evidence and obtain findings that it is more likely than not that the workman's activity at his work overstrained his heart and precipitated his death.

The testimony of Dr. Gwynne and of Dr. DeLeon may be reasonably construed to the effect that it was their opinion that Owen Henderson's work probably precipitated his heart attack and death. The jury was entitled to construe their testimony to that effect—and to accept it.

The problem here is whether a jury would be entitled to find—and whether the doctors were entitled to assume—physical activity by Henderson prior to his attack. This is by no means the first case where the efforts and injury of the workman have been connected by circumstantial evidence rather than by eyewitness testimony of a particular event to which the injury is directly connected. In *Carter v. Travelers Ins. Co.*, 132 Tex. 288, 120 S.W.2d 581 (1938), a hotel maid died of a cerebral hemorrhage. There was no proof of her movements on her last day at work. It was proved that she had been at her job for two or three hours before complaining of a pain in the back of her head, and it was proved that on prior days she had lifted heavy articles and moved furniture in the course of her employment. The proof was circumstantial, but it was legally sufficient to support the finding of the jury.

The very fact that tasks were preformed may be evidence of the workman's effort required to perform them. So in *Pan American Fire & Casualty Co. v. Reed*, 436 S.W.2d 561 (Tex.Civ.App.1968, writ ref'd n.r.e.), there was no witness available to testify to a particular incident of exertion immediately prior to the collapse of the truck driver, who was found dead in front of his truck; it was enough to prove that he had worked all day and that he had apparently drained a pump prior to his death. In *Standard Fire Ins. Co. v. Sullivan*, 448 S.W.2d 256 (Tex.Civ.App.1969, writ ref'd n.r.e.), circumstances tended to prove that the deceased had operated a tractor to cut weeds on the day of his death.

I do not contend that all of the cases can be harmonized. Unfortunately, the courts are not always consistent. For example, in *Monks v. Universal Underwriters Ins. Co.*, 425 S.W.2d 431 (Tex.Civ.App.1968, writ ref'd n.r.e.), circumstances tended to prove that the workman was pulling a wheel and tire from the hub of an automobile at the time of the heart attack which caused his death. In my opinion a directed verdict was not justified.

The evidence in the present case indicates that Owen Henderson died at his job after having performed a full day's work which began at 7:30 a.m. There was evidence that his work was physically strenuous or demanding. Examples were given of the types of strain and pressure required by his job. We have no reason to require proof of an episode of physical exertion at the instant before Henderson collapsed—not if the doctors do not require that to make the medical causal connection. The doctors took the findings of the autopsy and the time and place of Henderson's death; then with their knowledge and experience they concluded that Henderson's work probably was a producing cause of his death.

I believe that a jury could find that Henderson's body was subjected to strain by this day's work. It is not a question of presumption—or presumption upon presumption. It is simply that evidence that Henderson successfully completed this day's work, together with evidence of what his job required, reasonably support the conclusion that Henderson probably did tire and strain his diseased heart until the deadly attack occurred.

I concur in the remand of the cause for trial.

STEAKLEY, J., joins in this concurring opinion.

GREENHILL, Chief Justice (dissenting).

Only four years ago, this Court, following its previous holdings, held that for there to be an accidental injury, or an industrial accident, there must be an undesigned, untoward event traceable to a definite time, place, and cause. This was in a heart attack case, *Olson v. Hartford Accident & Indemnity Co.*, 477 S.W.2d 859 (Tex.1972). That opinion quoted the late Justice Norvell who had written that the Legislature has not provided health insurance, but has designed the law to provide for compensation for incapacity flowing from an accidental personal injury except in cases of occupational diseases. That opinion reviewed our previous heart attack cases. They show a liberal interpretation of the workmans'

compensation statute, but nevertheless a requirement of some particular strain, exertion, or other precipitating event.

Almost any job insured for workmens' compensation contemplates some form of physical activity, some more strenuous than others. It is difficult to imagine instances where the employment of workmen could not involve physical activity and some strain.

What we have in this case is a job description,—the type of work the man did, and testimony of the job description that the work *could be* strenuous, plus some testimony, later discussed, that *the job* was strenuous.

Neither the Court nor the plaintiff cite any cases wherein a general job description, which includes the possibility of strenuous activity, has been held to be sufficient for a recovery under workmens' compensation. On the other hand, there is a substantial line of cases, all approved by this Court, where this has been held not to be enough.

Evidence amounting to a general job description was found to be insufficient in the following cases. In *Whitaker v. General Insurance Co.*, 461 S.W.2d 148 (Tex.Civ.App. 1970) writ ref'd n.r.e., the plaintiff had the same type of attack as Mr. Henderson. He had an arrhythmia and ventricular fibrillation. There was direct evidence that the plaintiff worked at the service station but no evidence that he performed any particular activity which was competent to produce the attack. The Court held that there must be probative evidence that one seeking recovery did actually sustain a strain or exertion which amounted to a compensable injury and the mere fact that an employee dies on the working premises is not enough.

In *O'Dell v. Home Indemnity Co.*, 449 S.W.2d 485 (Tex.Civ.App.—1969), writ ref'd n.r.e., the Court held that:

"While the evidence presented here indicated that the work performed by the deceased was normally strenuous, plaintiff produced no evidence that O'Dell's heart attack was related to or occasioned by any unusual strain or overexertion in O'Dell's work. *Evidence that the work*

*performed by the deceased was strenuous, standing alone, is not sufficient.*" [Emphasis added.]

There was no evidence of particular activities causing strain or overexertion and the court stated that in order to show a compensable injury of this nature, strain or overexertion may not be presumed. It must be shown by the evidence.

In *General Accident, Fire & Life Assur. Corp., Ltd. v. Perry*, 264 S.W.2d 198 (Tex. Civ.App.1954) writ ref'd n.r.e., Plaintiff was found dead at the intersection of two highways after walking one mile from a tractor which he had been operating. His job was to build and repair fences and to operate a tractor with a sickle-type moving blade.

There was direct evidence that plaintiff had been driving the tractor mowing grass along the road and that it had mired up on the side of the road; that some attempt had been made to unstick the tractor; that the wheels of the tractor were more difficult to turn when it was mired; but there was no evidence of particular stress or event which caused his attack. The holding was that the trial court should have granted the defendant's motion for judgment notwithstanding the verdict.

In *Monks v. Universal Underwriters Ins. Co.*, 425 S.W.2d 431 (Tex.Civ.App.1968) ref'd n.r.e., the Court found no evidence of strain or exertion beyond the normal activities of his job as an auto mechanic. His job *could have been* strenuous. He had been changing tires that morning and there was direct evidence that he had taken the lugs off the wheels with a machine. No one testified to his specific activities at the time of the attack or as to any strain or exertion. He became ill while "criss-crossing" tires on an automobile. The general *job description* was held to be no probative evidence,—even a description of work done that morning. The holding was that the trial court correctly instructed a verdict for the defendant.

In *Bean v. Hardware Mutual Casualty Co.*, 349 S.W.2d 284, (Tex.Civ.App.1961) writ ref'd n.r.e., the employee operated a

blacksmith shop and handled pieces of metal. Some pieces were heavier than others. It was his duty to bring these pieces of metal into the shop with the assistance of a chain hoist. The only evidence admitted before the court amounted to a general job description of plaintiff's typical duties as an iron cutter for the Texas Metal Works, which work could have been strenuous. The Court refused to pile presumption on presumption such as to first presume that plaintiff was doing the strenuous work on the day in question and then that he suffered some strain or exertion causing injury which then caused the attack resulting in death three years later. There was no evidence other than that he worked that day and that he performed some duties which he normally performed.

In *Houston Fire & Casualty Ins. Co. v. Biber*, 146 S.W.2d 442 (Tex.Civ.App.1940) writ dism'd. judgmt. cor., the plaintiff Biber, a foreman at a cotton seed company, while at work collapsed between the seed house and the office on a hot day. Evidence amounting to a typical job description for the employee was introduced, but there was no evidence that he actually performed any of the strenuous activities described. Plaintiff relies on inferences. The late Justice Norvell wrote that, "the fact that Biber was about the premises of the employer, in itself is not sufficient to establish the necessary causal relationship." "The jury findings to the effect that Biber while in the course of his employment underwent physical exertion or became overheated causing a cerebral hemorrhage and death are based upon speculation, conjecture and surmise and therefore cannot stand."

In *Travelers Ins. Co. v. Smith*, 448 S.W.2d 541 (Tex.Civ.App.1969) writ ref'd n.r.e., the employee had been employed as a pumper and treater for oil wells. His duties were to carry chemicals in 30 pound containers to the wells and to lift other materials weighing 50 to 100 pounds. The day he had a heart attack, he left home at 6:30 a.m. There was evidence that the deceased was seen driving his employer's truck at 9:00 a.m., going to a lease where the employer's well needed treatment. He had with him the necessary equipment to do the treatment, but at 10:00 a.m. he was at home with chest pains. The court found no valid proof that the deceased suffered a strain or overexertion. "Evidence which establishes only that the event *could have* occurred does not satisfy the requirement, it must be sufficient to support a finding that it *did* occur." That deceased *could have* been moving some equipment does not constitute evidence of probative force. Notwithstanding a dissent by one justice of the Court of Civil Appeals, this court denied a writ of error.

Our case, in my opinion, is not controlled by *Baird v. Texas Employers Insurance Company*, 495 S.W.2d 207 (Tex.1973). This Court pointed out in *Baird* that before the employee had the heart attack, he had had repeatedly to climb a ladder and was doing work that he had not customarily done, i.e., bending conduits. The medical testimony as to causation was centered on these particular physical activities,—climbing ladders, lifting aluminum sheets, and twisting conduits overhead while on the ladder. There was in *Baird* at least some proof of direct, job related strain. It wasn't much; and, in my opinion went as far as the Court should go. This case goes much farther,— or all the way.

Other cases are cited by the plaintiff, but they all at least purport to follow the general rule of *Olson,* and they are distinguishable.

In *Continental Insurance Company v. Marshall*, 506 S.W.2d 913 (Tex.Civ.App. no writ), the El Paso Court restated the rule established in *Olson, supra,* that there must be an occurrence traceable to a definite time and place. The plaintiff in *Continental* was found dead at the top of a flight of stairs. His job involved opening a valve at the top of the stairs. The valve was half open, and a tool used to open valves was lying beside the plaintiff. He had suffered a prior attack while attempting to open such a valve. While no one saw him attempt to open the valve, there is certainly

direct evidence of his climbing the steps and strong circumstantial evidence of his attempt to open the valve. Medical testimony established the causation factor.

In *Hardware Mutual Casualty Company v. Wesbrooks*, 511 S.W.2d 406 (Tex.Civ.App. —Amarillo 1974, no writ), there was direct evidence that the plaintiff suffered pain in the chest, difficulty in breathing and complained of heart pains, following his efforts in moving heavy jacks for Wesbrooks Hydraulic Equipment Service Company. Plaintiff there presented direct evidence of a particular job related occurrence which caused the attack.

In the present case the plaintiff has presented no evidence of *any* work activities actually performed on the day of the attack and has produced only testimony consisting of a *general job description* to indicate the possibility of job related activities resulting in strain or exertion. The plaintiff's medical expert testified that if the plaintiff had worked as an air tugger operator and the job had been mildly strenuous, it *could* have been a producing cause, but so could about any other activity or stress unrelated to the job.

The only evidence suggesting that the job could be strenuous is contained in testimony from Mr. Donald L. LeBlanc, also an air tugger operator at Texaco, who testified as to the general nature of deceased's job. He also testified that he did not observe Mr. Henderson at work on January 16, 1973, and had no first-hand knowledge of what he actually did that day. All parties admit that the job is different on different units and at different times and that Mr. LeBlanc was testifying regarding a general description of the job of air tugger operator. Mr. LeBlanc could not say for sure that he had ever worked on the particular unit where Mr. Henderson supposedly worked on January 16, 1973.

Mr. LeBlanc's testimony indicated that the operation of an air tugger *could* be physically and mentally taxing and it usually took two people to run or operate it. He testified based upon the assumption that plaintiff was operating the tugger by himself.

On the other hand, Mr. Dawson, the supervisor, testified that unless the person running the air tugger let the cable pile up on the drum, and get tangled, he ordinarily would not be required to pull it off by hand. He also said that on this unit the operator would not ordinarily pull the slack out, and a good craftsman would not have a problem with cable pile-up.

There is no direct testimony from anyone who observed any of the plaintiff's activities on January 16, 1973. Mr. Dawson, plaintiff's supervisor, was the only witness called to testify as to the actual nature of plaintiff's work on the day of his death. He testified that the plaintiff was there at 7:30 and that running the air tugger was his assigned job. When asked, "Did Mr. Henderson work at this job as operating that air tugger all during the day, that is, eight hours of his shift on the day he died?", Mr. Dawson answered, "Yes, sir, that was his primary job." Taken in isolation that statement is misleading because Mr. Dawson also testified that, "On this day, the only contact that I actually had with him (plaintiff) was probably just, 'Good morning, Oakie.'" He also testified that he might have been up on the structure all day, that he did not supervise Mr. Henderson's work, and that he was not aware of Mr. Henderson's particular activities on the day of his death.

As stated, the possibility of strain or exertion is present in all types of employment especially those jobs involving some element of manual labor. If proof that one's job may, or even usually does involve some manual labor, or may be strenuous, is sufficient to establish particular strain or overexertion for recovery under the Workmen's Compensation Laws, then we really have turned this legislation into health insurance. Health insurance may be highly desirable, but the Legislature has not provided for it.

I agree with the judgments of the trial court and the Court of Civil Appeals and with the opinion of the Court of Civil Appeals where the holdings are that there is

present in this case no evidence of probative value which raises a fact issue as to plaintiff's suffering any particular strain or exertion while at work. I would affirm.

DENTON, J., joins in this dissenting opinion.