cv1-420 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 



NO. 3-91-420-CV




DIANE FINCH, INDIVIDUALLY AND AS INDEPENDENT


EXECUTRIX OF THE ESTATE OF HOWELL FINCH,



 APPELLANT


vs.





FEDERAL DEPOSIT INSURANCE CORPORATION,



 APPELLEE



 



NO. 3-91-421-CV




MAX J. LUTHER, III,



 APPELLANT


vs.





FEDERAL DEPOSIT INSURANCE CORPORATION,



 APPELLEE



 



FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH & 201ST JUDICIAL

DISTRICTS


NOS. 455,605 & 489,245, HONORABLE F. SCOTT McCOWN, JUDGE PRESIDING


 




 NCNB Texas National Bank (1) sued Diane Finch and Max Luther, III to enforce their
obligations under two separate guaranty agreements when Pilot Knob, Ltd., a limited partnership,
defaulted on a note held by the bank. Finch and Luther responded with denials and counterclaims
and asserted, among other defenses and claims, material alteration and unconscionability under
the Deceptive Trade Practices Act. Tex. Bus. & Com. Code Ann. §§ 17.41--.65 (1987 & Supp.
1992). The two causes were consolidated for trial. 

 The trial court refused to submit NCNB's requested issues on the counterclaim of
unconscionability and submitted the defensive question of material alteration to the jury. After
the jury found for the appellants the trial court entered judgment notwithstanding the verdict in
favor of NCNB. We will reverse that portion of the trial court's judgments and render judgment
that the bank take nothing against the guarantors and then affirm the judgments of the trial court
in all other respects.



THE CONTROVERSY



 In January of 1985, Pilot Knob purchased 391 acres in southeast Travis County. 
The partnership paid $900,000 cash down and borrowed $3,600,000 from Interstate Bank of
Austin. The bank secured the loan by a deed of trust lien upon the property and limited guaranty
agreements obtained from the various partners.

 Under the loan agreement, all payments were to be credited first to interest and the
balance to principal. When the first payment came due on January 4, 1987, Pilot Knob paid only
the interest. In March of 1987, the bank loaned Pilot Knob additional funds. As consideration
for the loan and in lieu of the scheduled principal payment, the partners put up letters of credit
in proportion to their ownership in the venture. The letters of Finch and Luther were in the
amounts of $41,308 and $66,625, respectively. In January 1988, the partnership again failed to
make its scheduled principal payment and in February the bank called the letter of credit pledged
by Dr. Robert Jenkins, the managing partner. The bank, now known as "InterFirst," applied the
entire proceeds to the outstanding principal balance of the partnership note without any reduction
of the current interest.

 In March of 1988 the bank, by now "First Republic," renewed and extended the
lien under a modification agreement. On July 4, 1988, the next due date, Pilot Knob again failed
to make its payment. By August 1988, the "InterFirst--First Republic" holding company was
defunct, and the bank, now known as NCNB, sent a notice of default to Pilot Knob demanding
payment of more than $350,000.

 A month later NCNB accelerated the note, making an additional $241,803 payable
immediately. The bank sent demand letters to all the partners on October 28, 1988, and in mid
December NCNB called the letters of credit pledged by both Finch and Luther as well as the other
partners. The bank applied the proceeds of these letters of credit to the outstanding principal
balance of the loan, once again refusing to apply any of the proceeds to the accrued interest.



CONTENTIONS ON APPEAL



 Finch and Luther first argue that the trial court erred in rendering judgment n.o.v.
in favor of NCNB. They next contest the court's directed verdict on the DTPA issue, the court's
failure to render judgment in their favor, and the judge's refusal to submit to the jury a number
of proposed questions and instructions on the issue of unconscionability. The bank answers with
a number of cross-points.



DISCUSSION & HOLDING



1. Material Alteration

 Finch and Luther contend that the trial court incorrectly rendered judgment n.o.v.
on the issue of material alteration. We agree. The jury found that "the written provisions of the
note between the bank and Pilot Knob, Ltd. [were] materially altered." The trial court determined
that this answer should be disregarded. A jury finding may only be disregarded if there is no
support in the evidence or when the question is "immaterial." C&R Transp., Inc. v. Campbell,
406 S.W.2d 191, 194 (Tex. 1966). This Court is required to review the record to determine
whether there is "some evidence" to support the jury's finding. We view the evidence in the light
most favorable to appellants' position, and must disregard all contrary evidence and inferences. 
Williams v. Bennett, 610 S.W.2d 144 (Tex. 1981); Henderson v. Travelers Ins. Co., 544 S.W.2d
649 (Tex. 1976). In order to sustain a judgment n.o.v., there must be no evidence upon which
the jury could have based its finding. Douglas v. Panama, Inc., 504 S.W.2d 776 (Tex. 1974).

 We find that Finch and Luther submitted evidence of material alteration at trial and
the jury verdict must be upheld. Texas courts apply the rule of strictissimi juris in interpreting
guaranty agreements to refrain from extending the guarantor's obligation beyond the express
written terms of the agreement by implication. Vastine v. Bank of Dallas, 808 S.W.2d 463, 464
(Tex. 1991). A material alteration occurs if the creditor and principal debtor vary the terms of
their written contract without the consent of the guarantor. Id. The alteration must be one that
either injures the guarantor or increases the risk of injury to the guarantor. Id. Finally, if the
creditor and principal materially vary the terms of their contract, a new contract is formed and
the guarantor is not bound thereby. Id.

 Finch and Luther contended that NCNB was bound by the precise terms of the
contract. Therefore, NCNB's application of the money obtained through the letters of credit to
principal without first applying it to interest was a material alteration of the agreement without
their consent and to their prejudice. They assert this alteration adversely affected their taxable
status and that without this deviation from the agreement the partnership would have been in
compliance with the terms of the contract, at least at the time the proceeds were applied. 

 It is clear from the language of Vastine that the bank was not empowered to change
the terms of the agreement. The supreme court has also held that when the meaning of a guaranty
contract is uncertain, a court must construe the contract most favorably to the guarantor. Coker
v. Coker, 650 S.W.2d 391, 394 (Tex. 1983). The record clearly demonstrates that the bank
applied monies received from the appellants to principal. It is equally apparent that the contract
required NCNB to apply such payments first to interest and then to principal. Additionally, Finch
and Luther offered some evidence at trial pertaining to financial injury suffered as a result of
NCNB's alteration of the agreement.

 NCNB contends that the application of the material alteration doctrine does not
apply because the agreement of the parties was a "continuous guarantee." Although a continuous
guarantee maintains the responsibility of a guarantor for changes occurring within the scope of
his agreement, it will not bind a guarantor to a contract that was materially altered without his
consent and to his detriment. We sustain appellants' first four points of error. 

2. Unconscionability.

 We hold that the trial court correctly directed a verdict against Finch and Luther
on their counterclaims under the Deceptive Trade Practices Act because neither was a consumer in regards to NCNB. A person must be a consumer in order to bring suit under the act. Tex.
Bus. & Com. Code Ann. § 17.50 (1987); Riverside Nat'l Bank v. Lewis, 603 S.W.2d 169, 173
(Tex. 1980). The DTPA defines a consumer as "an individual, partnership, corporation, this
state, or a subdivision or agency of this state who seeks or acquires by purchase or lease, any
goods or services." DTPA § 17.45(4) (1987). It is well settled that merely borrowing money
does not constitute seeking to acquire goods or services sufficient to trigger consumer status under
the DTPA. Riverside Nat'l, 603 S.W.2d at 169. 

 Finch and Luther contend they acquired services from the bank in conjunction with
the financing, making the partners consumers under the DTPA. Finch and Luther offer La Sara
Grain Co. v. First Nat'l Bank, 673 S.W.2d 558 (Tex. 1984), in support of this position. There
the court stated "[s]ince the holding in Riverside Nat'l, we have twice limited the case to its facts,
emphasizing that Lewis sought only the extension of credit from Riverside, and nothing more." 
Id. at 566. Finch and Luther assert that the efforts to limit Riverside show an intent by the courts
to qualify parties, like the partners, as consumers. 

 We disagree. In La Sara, the appellant sought to obtain services that correspond
to a checking account and for that reason the court found the appellant to be a consumer. Here,
Finch and Luther merely borrowed money. It is equally apparent from the record that there was
no acquisition of services involved in this transaction. To be consumers of service, the partners
must have received "work, labor, or service purchased or leased for use, including services
furnished in connection with the sale or repair of goods." DTPA § 17.45(2) (1987). Here the
loan was the only transaction between the bank and the appellants. This case involves nothing
more than an extension of credit and requires the application of the Riverside doctrine. 

 We conclude that Finch and Luther were not consumers under the DTPA. 
Accordingly, they have no standing to raise a claim of unconscionability under that statute. The
trial court correctly granted a directed verdict in favor of NCNB and did not err by refusing to
submit appellants' questions and instructions numbered three through seven to the jury, relating
to appellants' DTPA claims. We overrule appellants' fifth through fourteenth points of error.



CROSS-POINTS



 NCNB raises six cross-points on appeal. The bank's first two points contend that,
if we find error in the rendition of judgment n.o.v., the trial court erred by submitting the material
alteration question and instruction to the jury because the evidence was insufficient to raise the
issue. The third and fourth points assert that if error is found in the judgment n.o.v., this court
should render judgment against Finch and Luther after the bank reapplies the proceeds from the
letters of credit in conformity with the agreement. NCNB's last two cross-points were
conditioned on a finding by this Court that Finch and Luther were consumers.

 We find sufficient evidence for submission of the material alteration issue for the
same reason that we reversed the judgment n.o.v., and overrule the first two cross-points of error. 
We overrule NCNB's third and fourth cross-points as well: Once a guaranty agreement is
materially altered, the guarantor is no longer bound thereby. The remaining points are moot since
we affirmed the directed verdict granted by the trial court on the issue of consumer status.



CONCLUSION



 Having found that the trial court erred in granting judgment n.o.v. for appellee,
we reverse those portions of the judgments below and render judgment that appellee take nothing
on its claims against appellants. In all other respects the judgments of the trial court are affirmed.



 

 Jimmy Carroll, Chief Justice

[Before Chief Justice Carroll, Justices Aboussie and Kidd]

Affirmed in Part; Reversed and Rendered in Part on Both Causes

Filed: July 1, 1992

[Do Not Publish]
1. After the bank's brief was filed, this Court granted a motion to substitute the Federal
Deposit Insurance Corporation as appellee.