# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

ON MOTION FOR REHEARING

NO. 03-18-00526-CV

**Thomas Kam, Appellant**

**v.**

**Badruddin Karedia, Appellee**

FROM THE COUNTY COURT AT LAW NO. 1 OF TRAVIS COUNTY
NO. C-1-CV-16-007167, THE HONORABLE TODD T. WONG, JUDGE PRESIDING

## DISSENTING OPINION

I respectfully dissent and would reverse the county court at law's judgment granting a directed verdict in favor of Karedia.

"In reviewing a trial court's directed verdict, we examine the evidence in the light most favorable to the person suffering an adverse judgment and decide whether there is any evidence of probative value to raise an issue of material fact on the question presented." *Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 215 (Tex. 2011) (citing *Henderson v. Travelers Ins.*, 544 S.W.2d 649, 650 (Tex. 1976)). Although Karedia contracted with Hardt for a construction project, including a new roof, it is undisputed that Karedia was dissatisfied with the metal roof trusses contemplated by Hardt under the contract. Karedia testified at trial that Hardt

in fact delivered the trusses, consistent with their contract, but that Karedia decided that he specifically wanted steel trusses rather than those to which he had initially agreed. Following Karedia's insistence on steel trusses, Hardt contacted Kam for assistance in redesigning the roof to accommodate that request. Kam testified that he did not have a formal written contract with Hardt or Karedia because of the relatively small size of his part of the project and instead relied on their oral and email communications to him.[1] It is also undisputed that at least three months after Hardt was no longer working on the project, and Karedia was working as his own general contractor, Karedia directly emailed Kam to have him review sets of shop drawings for the project.[2] Kam's statement of facts explains that "Karedia contacted me directly in November 2014 and requested my services to complete the assignment of redesigning his roof system . . . . I promptly completed this service to redesign the roof for Badruddin Karedia in November 2014." The Court misconstrues the separate negotiations between Kam and Hardt and Kam and Karedia for roof re-design services as one identical request despite the evidence that these requests were made by separate customers at separate times.

After responding to Karedia's request, Kam invoiced Karedia and Hardt a $2,500 fee for design consulting services. Neither Karedia nor Hardt paid Kam.[3] Karedia does not

---

[1] In asserting that Kam had no contract with Karedia, the Court relies on Kam's testimony that the email from Karedia did not amount to a contract. When asked if he ever entered into a written contract with Hardt, Kam also unequivocally testified "no."

[2] As Kam argued both in the trial court and this Court, Kam's work on the project ultimately resulted from a separate communication from Karedia directly to Kam in November 2014—months after Hardt was no longer working on the project. Karedia testified that he had no contact with Hardt after "August or July" 2014. Kam argued before the trial court that Karedia was acting as the general contractor for the project when Hardt left and that Karedia "specifically contacted" Kam to request "additional Engineering Services."

[3] Kam consistently argued that both Hardt and Karedia separately requested Kam's design services, each received them, and both failed to pay.

2

dispute that Kam provided him $2,500 worth of services for the project, but Karedia argues, consistent with his trial testimony, that paying Hardt $353,187 of the $372,500 due under the contract between Karedia and Hardt satisfied not only the debt owed to Hardt, but also somehow also satisfied any debt owed to Kam. However, the evidence at trial showed that Karedia did not make any payments to Hardt from the time that Kam became involved in the project.[4] The record also showed that although most of Karedia's checks were paid to Hardt Construction, Karedia wrote separate checks to pay debts not owed directly to Hardt Construction. For example, Karedia wrote checks payable directly to Tony Hardt, to the City of Liberty Hill, and, notably, to Perales Engineering and AMC Engineers for services they provided on the project. Given the absence of any payments made to anyone following Kam's involvement in the project, the practice apparent from the face of the canceled checks in the record, and Karedia's testimony that he paid for work as it was completed, it is difficult to conclude that Kam has not provided "any evidence of probative value to raise an issue of material fact on the question" of whether Kam may recover in quantum meruit. Because the express contract between Hardt and Karedia did not cover the redesign of the roof necessitated by Karedia's preference for steel trusses, nor are the terms of any other allegedly express agreement contained in the record, I would hold that Karedia has not established as a matter of law a defense to Kam's claim, even assuming that Karedia paid Hardt in full for work Hardt completed pursuant to their contract. As a result, I conclude that Kam has presented evidence raising a fact issue essential to his right of recovery under a theory of quantum meruit. *See Prudential Ins. Co. of Am. v. Financial Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000) ("a court may direct a verdict when a plaintiff fails to present

---

[4] Kam argued that Karedia never paid anyone for the revised roof design. Kam's opening issue in his brief to this Court explains that neither Hardt nor Karedia ever paid Kam for any of the services he provided for the project.

evidence raising a fact issue essential to the plaintiff's right of recovery" or "if the plaintiff admits or the evidence conclusively establishes a defense to the plaintiff's cause of action").

I also disagree that the parties' testimony "conclusively" establishes the terms of Kam's alleged agreement with Hardt (and corresponding lack of agreement with Karedia) in a manner that forecloses a claim for unjust enrichment. Kam testified that Hardt made the "initial call" to Kam, but that Karedia later directly contacted Kam, months after Hardt was no longer working on the project. Karedia could not have demanded that Kam provide design services based on any contract. Karedia was therefore obligated to compensate Kam for work Karedia requested. Kam testified, and the evidence corroborates, that he rendered valuable services to Karedia at Karedia's request, that Kam completed work for which Karedia would have otherwise had to pay another consulting firm, and that Karedia's practice was to pay for work after it had been completed. Karedia agrees that he did not pay Kam or Hardt at any point after Kam became involved in the project. Kam has therefore consistently asserted that Karedia received the benefit of Kam's services without having paid for them and while knowing that Kam would expect payment from him. Because Karedia asked for and received redesign services from Kam that were outside the scope of Karedia's contact with Hardt and provided no payment to anyone after Karedia requested and received Kam's assistance, I would conclude that Kam preserved his right to seek recovery under a theory of unjust enrichment. *See Heldenfels Bros., Inc. v. Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992) ("A party may recover under the unjust enrichment theory when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage."). Based on the record, I would conclude that Kam presented evidence raising a fact issue as to whether he could establish his claim for unjust enrichment.

4

For the foregoing reasons, I would reverse the trial court's judgment and remand to that court for further proceedings.

_____

Gisela D. Triana, Justice

Before Justices Goodwin, Baker, and Triana

Dissenting Opinion

Filed:   December 13, 2019