Larry **TARKINGTON**, Appellant,

v.

**BENEFICIAL FINANCE COMPANY OF PORT ARTHUR et al., Appellees.**

No. 7618.

Court of Civil Appeals of Texas, Beaumont.

Nov. 14, 1974.

Rehearing Denied Dec. 12, 1974.

Adams & Browne, Beaumont, for appellant.

Rienstra, Rienstra & Dowell, Beaumont, for appellee.

DIES, Chief Justice.

On July 9, 1971, plaintiff—appellant— brought suit against Sears, Roebuck and Company for harassment in attempting to collect a debt, alleging he suffered mental anguish and humiliation, and asking for damages. On September 15, 1972, by first amended petition, plaintiff made Beneficial Finance Company of Port Arthur defendant, dropping Sears. On December 22, 1972, by second amended petition, plaintiff joined as defendant, Jerry D. Wooten.

Trial was to a jury at the conclusion of which both defendants filed a motion for instructed verdict which was granted by the court, and from which plaintiff perfects this appeal. Herein the parties will be designated as they were below.

In this review of an instructed verdict, our task is to determine if there was sufficient evidence of probative value to raise a fact issue, and we must consider only the evidence favorable to plaintiff. We are obligated to order a trial if a fact

issue was raised even if a verdict based on such evidence would have to be set aside for insufficient evidence. Angelo State Univ. v. International Ins. Co. of N. Y., 491 S.W.2d 700 (Tex.Civ.App.—Austin 1973, no writ); Anderson v. Moore, 448 S.W.2d 105 (Tex.1969).

Defendant's motion for instructed verdict as well as their briefs present these contentions: that there is no evidence the telephone call made the basis of this suit was placed by either of these defendants, their agents, servants, and employees; and the cause of action asserted was barred by the two-year statute of limitation.

On September 10, 1970, when plaintiff got home from work his sister-in-law informed him that his brother, Ray Tarkington, had been killed. She (the sister-in-law) had received this information by telephone from the financial agent of his union, who also left a number for plaintiff to call, which was supposed to be the Levingston Funeral Home. Plaintiff called the number asking if it was the funeral home. A woman answered saying, "Well, hold on a minute." A man then came on saying it was not the funeral home but "Sears." His wife then called the business agent, who called the funeral home and was told the brother was not there. The agent then called the brother's employer and learned the brother had worked that day. This was in the afternoon. Later that night—about 11 p. m.—plaintiff learned that his brother was all right. Plaintiff was previously married to Glenda Alvarez who had bought a Bell and Howell camera by mail. (There is no testimony from whom.) Plaintiff originally thought the phone call came from Sears and first became aware Beneficial Finance might be involved eighteen months after the phone call. Plaintiff's wife and sister-in-law testified, and their testimony was substantially that above summarized from plaintiff.

Interrogatories revealed that defendant, Jerry D. Wooten, was manager of the loan office of defendant, Beneficial Finance Company. That a commercial relationship was established by mail on August 1, 1968, and August 11, 1969, between Beneficial and plaintiff. That in September 1970, Beneficial attempted to locate plaintiff to no avail. Beneficial, or its employees, had never used the name "Ron Horn."

Edward M. Snap was a former employee of Beneficial. He said Beneficial had a number of telephone lines including one "blind" line. Most of his testimony to explain this was excluded. The financial secretary of plaintiff's local, Pat Sapaurx, testified that on September 10, 1970 about 3:30 p. m. or 4 p. m., he received a call from a man identified as Ron Horn asking plaintiff's phone number. Sapaurx said he didn't give that information, but he would have plaintiff call if the caller left his number. The caller said, "It's an emergency. His brother was killed in a car wreck, Ray was, Ray Tarkington; and he's at Levingston Funeral Home." Sapaurx then called plaintiff's home, and the brother's employer as previously set out. The caller to Sapaurx never identified himself as Beneficial Finance. On Tuesday of the following week Sapaurx called the number back, and the answerer identified as Beneficial finance. He asked for Ron Horn, and a fellow named Wooten said he was on another assignment. He used the same number given him on the September 10th call. The number was 962–5718.

Jerry Wooten testified that Beneficial had a note to collect from plaintiff that was assigned from Consumer Home Service; that Beneficial had several lines on a "rotary." Their main number was listed, the others "rang one after the other." It was "possible" at times they would dial out on a number not listed and leave that number for the caller to call back on. They had never had an employee by the name of "Ron Horn."

On October 20 and 21 of 1971, he had given a deposition saying at that time he had not worked on the Larry Tarkington

(plaintiff) claim. Office records showed sale by mail of a Bell and Howell movie "outfit" and a note signed by plaintiff's ex-wife. Beneficial's records also show the phone number of plaintiff's union local (722–8355). These records also reflect the name and address of plaintiff's brother, Ray Tarkington. On September 10, 1970, the telephone numbers of Beneficial were 962–5716, 962–5717, and 962–5718.

Salvadore M. Vinterella, manager of Beneficial Finance Company of Port Arthur at the time of the trial, said Beneficial had one blind telephone line used for collection purposes so that debtor wouldn't recognize the number.

Gilbert T. Adams, Jr., plaintiff's attorney, testified he called the number agent Sapaurx was given in either October 1970 or 1971 and was answered, "Beneficial Answering Service."

We first consider the counter point that there was no evidence the telephone call, made the basis of the law suit, was placed by either defendants, their agents, servants, and employees.

Defendants cite Texas Candy & Nut Co. v. Horton, 235 S.W.2d 518 (Tex.Civ.App. —Dallas 1950, writ ref'd n. r. e.). There (Page 521) it is stated:

"The general rule applicable to such conversations over telephone is well settled. When the party called over a telephone depends entirely upon the word of the party calling as to his identity, the conversation is hearsay and not admissible. If, however, the party calling, in addition to his statement of his identity, relates facts and circumstances which, taken with other established facts, tend to reveal his identity, then the conversation is admissible. Such evidence makes a question of fact as to such identity of the person calling. National Aid Life Ass'n v. Murphy, Tex.Civ.App., 78 S.W.2d 223, syllabi 7 and 8 and Thomasson v. Davis, Tex.Civ.App., 74 S.W.2d 557 . . ."

Here we need not rely on the conversation of anyone to establish that the telephone number given agent Sapaurx was one of Beneficial's. Defendant Wooten so admitted.

Perhaps under the rule of the Texas Candy & Nut Co. Case, supra, the fact that Beneficial's records contained the name and address of plaintiff's brother, the fact of indebtedness by plaintiff to Beneficial as shown by the records, the testimony of Sapaurx that in his second call he was told by Wooten, Beneficial's Manager, that Ron Horn was on another assignment, the further fact that Beneficial records contained the phone number of plaintiff's union (answered by Sapaurx), and the evidence of "blind" lines, except these conversations from the usual hearsay rule. But, as we view it, the identity of the phone number given Sapaurx as being Beneficial's does not depend on hearsay testimony, and the testimony of plaintiff and his attorney to the effect they believed Sears to be the defendant was admissible evidence. All of the foregoing raised an issue of fact as to whether or not the telephone call in question was placed by either defendant, and the trial court erred in granting defendant's motion for instructed verdict on such ground.

See also Gleason v. Davis, 155 Tex. 467, 289 S.W.2d 228, 232 (1956):

"The general rule is that while it is necessary to the admission of testimony as to the contents of a telephone conversation to establish the identity of the person with whom the witness talked, such identity is regarded as established if the witness says he identified the voice of the person with whom he talked. Or, if a call is made to a business office over a line maintained by it for business purposes, the conversation will be admitted if such person represents that he is the person called and is one authorized to take the message, in the absence of proof to the contrary. Spolane v. Coy, Tex.Civ.App., 153 S.W.2d 672 (no writ

hist.). And see Colbert v. Dallas Joint Stock Land Bank, 136 Tex. 268, 150 S.W.2d 771. Also, if the message reveals that the speaker had knowledge of facts that only the speaker would be likely to know, authenticity will be regarded as established. McCormick on Evidence, Sec. 193."

■ We next consider the matter of the two year statute of limitation. As above-noted the date of the telephone call was September 10, 1970, and Beneficial was sued September 15, 1972; Wooten, December 22, 1972—both more than two years later.

■ To excuse himself, plaintiff relies on estoppel. Concealment under proper circumstances will in Texas estop a defendant from relying on limitations. Nichols v. Smith, 507 S.W.2d 518 (Tex. 1974); Bernard v. Thompson, 138 Tex. 277, 158 S.W.2d 486 (Tex.Comm'n App. 1942, opinion adopted); Owen v. King, 130 Tex. 614, 111 S.W.2d 695 (Comm'n App. 1938, opinion adopted); Texas Rice Land Co. v. McFaddin, Weiss & Kyle Land Co., 265 S.W. 888 (Tex.Comm'n App.1924, jdgmt adopted); Gulbenkian v. Penn, 151 Tex. 412, 252 S.W.2d 929 (1952); Marek v. Goyen, 346 S.W.2d 926 (Tex.Civ.App.— Houston 1961, no writ); Lanpar Company v. Stanfield, 474 S.W.2d 753 (Tex.Civ.App. —Waco 1971, writ ref'd n. r. e.); Pan American Petroleum Corporation v. Orr, 319 F.2d 612 (5th Cir. 1963).

In 51 Am.Jur.2d Limitation of Actions § 147 at 717 (1970) we find:

"The general rule supported by the decisions in most jurisdictions is that the fraudulent concealment of a cause of action from the one to whom it belongs, by the one against whom it lies, constitutes an implied exception to the statute of limitations, postponing the commencement of the running of the statute until discovery or reasonable opportunity of discovery of the fact by the owner of the cause of action; under this rule, one who wrongfully conceals material facts and thereby prevents discovery of his wrong or the fact that a cause of action has accrued against him is not permitted to assert the statute of limitations as a bar to an action against him, thus taking advantage of his own wrong, until the expiration of the full statutory period from the time when the facts were discovered or should with reasonable diligence have been discovered. Stated in another way, the general trend of the decisions is in support of the rule that where a party against whom a cause of action has accrued in favor of another prevents such other, by actual fraudulent concealment, from obtaining knowledge thereof, or the fraud is of such a character as to conceal itself, the statute of limitations will begin to run from the time the right of action is discovered or by the exercise of ordinary diligence might have been discovered. This rule finds application most frequently in actions based upon fraud or in which fraud is the gist of the action, but it is by no means restricted to actions of that character; the rule applies regardless of the nature of the cause, if the requisite element of fraudulent concealment of the cause of action is present, and it applies in actions at law as well as in suits in equity." (Footnotes omitted)

Applying the foregoing authorities to our case, it is clear that the two-year statute of limitations began to run from the time the right of action was discovered by the plaintiff or by the exercise of ordinary diligence might have been discovered. Considering the evidence found in our record, this presented a fact issue for determination by the jury and the trial court erred in granting defendant's motion for an instructed verdict. Plaintiff's point two is sustained.

Reversed and remanded.